**UNION INSURANCE COMPANY,**
a Nebraska corporation,
Plaintiff–Appellee,

v.

**Evelyn HOTTENSTEIN, Defendant–Appellant.**

No. 02CA2255.

Colorado Court of Appeals,
Div. II.

Dec. 4, 2003.

 

Retherford, Mullen, Johnson & Bruce, LLC, Jerry A. Retherford, Debra P. DeRee, Neil C. Bruce, Colorado Springs, Colorado, for Plaintiff–Appellee.

Campbell Bohn Killin Brittan & Ray, LLC, Michael G. Bohn, Daniel P. Queen, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge MARQUEZ.

In this action for declaratory relief involving a commercial general liability insurance policy, defendant, Evelyn Hottenstein, appeals the summary judgment in favor of plaintiff, Union Insurance Company. We affirm.

In 1998, Hottenstein filed a complaint against a construction company and its owner, alleging several claims, including breach of a contract to remodel her home and negligence. In 1999, pursuant to a provision in the construction contract, Hottenstein and the construction company arbitrated the dispute. The arbitrator awarded damages to Hottenstein in the amount of $80,165 calculated as follows:

A. Benefit of the Bargain Damages

| | | |
|---|---|---|
| 1. | Costs to complete contract | $35,800 |
| 2. | Costs to remedy defects (includes damages to repair inadequate work and to replace or repair personal property) | + 34,017 |
| 3. | Unpaid balance of contract price | |
| | a. Contract price | 44,137 |
| | b. Progress payments paid | − 34,745 |
| | (Subtract b. from a. to calculate unpaid balance of contract price) | (9,392) |
| 4. | Damages for lost business income | + 4,125 |
| 5. | Damages for lost rental income | + 2,700 |
| | [ (1 + 2 − 3] + 4 + 5 = total benefit of the bargain damages | 67,250 |
| B. | Damages for Negligent Performance (i.e., damage to existing roof) | 9,915 |
| C. | Damages for loss of enjoyment | 3,000 |
| | Total Damages | 80,165 |

Hottenstein later had the award reduced to a judgment.

The construction company was covered by Union under a commercial general liability policy. Union defended the construction company in the arbitration under a reservation of rights.

In July 2000, Union commenced this action for declaratory relief. Union admitted liability for the $9,915 negligence award, but sought a declaration that it had no duty to indemnify the construction company for the balance of the arbitration award.

After Union filed a motion for summary judgment, the trial court granted Hottenstein an enlargement of time until September 24, 2002 in which to respond to the motion. However, the court granted Union's motion on September 20, 2002. The trial court held that Union had no duty to indemnify the construction company for the damages of $67,250 for breach of contract and $3,000 for loss of enjoyment.

On September 24, 2002, Hottenstein filed her response to the motion for summary judgment, her cross-motion for summary judgment, and her motion for reconsideration, but the trial court summarily denied the motions.

I.

Hottenstein contends that the trial court erred by granting the motion for summary judgment without giving her an opportunity to oppose it as required by C.R.C.P. 56(c) and 121 § 1–15. We agree, but find the error to be harmless.

■ Our review of a summary judgment is de novo. *Aspen Wilderness Workshop, Inc. v. Colo. Water Conservation Bd.*, 901 P.2d 1251 (Colo.1995).

C.R.C.P. 56 contemplates that opposing parties will be provided an opportunity to respond to authority cited in support of a motion for summary judgment. *Antelope Co. v. Mobil Rocky Mtn., Inc.*, 51 P.3d 995 (Colo. App.2001). C.R.C.P. 56(c) provides that the party opposing a summary judgment motion "may file and serve opposing affidavits within the time allowed for the responsive brief." However, judgment "shall be rendered forthwith" if the pleadings, depositions, answers to interrogatories, and admissions, together with the affidavits, show that no genuine issue exists as to any material fact and that the moving party is entitled to a judgment as a matter of law. *See also Civil Serv. Comm'n v. Pinder*, 812 P.2d 645 (Colo.1991).

■ Under C.R.C.P. 121 § 1–15(1), a trial court must allow fifteen days or such time as the court otherwise allows for a nonmoving party to file responses or objections to motions involving contested issues of law. *Ogawa v. Riley*, 949 P.2d 118 (Colo.App.1997)(motion for judgment against surety). Failure to allow a party to respond within the allotted time constitutes an abuse of discretion. *Weatherly v. Roth*, 743 P.2d 453 (Colo.App.1987)(motion to dismiss); *Lanes v. Scott*, 688 P.2d 251 (Colo.App.1984)(motion to dismiss).

■ However, we disregard errors or defects in the proceeding that do not affect the substantial rights of the parties. C.R.C.P. 61. A party's substantial right is one that relates to the subject matter and not to a matter of procedure or form. *Sowder v. Inhelder*, 119 Colo. 196, 201 P.2d 533 (1948); *Cobbin v. City & County of Denver*, 735 P.2d 214 (Colo.App.1987).

■ Here, the trial court erroneously granted summary judgment in favor of Union four days before Hottenstein's response was due. However, Hottenstein's response, cross-motion, and related briefs are available in the record for our de novo review. On that review, we conclude that summary judg-ment was nonetheless proper, as discussed in the following sections.

## II.

Hottenstein contends that the trial court both misapplied the law and misconstrued the facts when it determined that the insurance policy established no duty for Union to indemnify the construction company for the arbitration award. We disagree.

### A.

We first reject Hottenstein's contention that the trial court overlooked certain ambiguities and conflicting terms in the insurance contract that are material to the interpretation of the contract and give rise to issues of material fact.

Hottenstein's response and motions included only one affidavit, that of counsel stating that further discovery is necessary as to (1) Union's decision to deny indemnity and custom and practice in paying similar claims, and (2) the intent of Union and the owner of the construction company at the time they entered into the insurance contract.

■ However, the intent of the parties should be determined from the language of the contract itself. Extrinsic evidence is not admissible until the contract has been found to be ambiguous. Whether a contract is ambiguous is a question of law that we review de novo. *Antelope Co. v. Mobil Rocky Mtn., Inc., supra.*

Therefore, we review the contract to determine whether it is ambiguous and conclude that it is not. Thus, counsel's request for further discovery was properly denied in any event.

### B.

■ Language is ambiguous if it is susceptible of more than one reasonable interpretation. *Dupre v. Allstate Ins. Co.*, 62 P.3d 1024 (Colo.App.2002). A mere potential for more than one meaning does not create an ambiguity. *Allstate Ins. Co. v. Juniel*, 931 P.2d 511 (Colo.App.1996).

Here, the contract provides a general grant of coverage for "property damage liability."

1. Insuring Agreement

    a. We will pay those sums that the insured becomes legally obligated to pay as damages because of ... "property damage" to which this insurance applies.

    . . . .

    b. This insurance applies to ... "property damage" only if:

        (1) The ... "property damage" is caused by an "occurrence" that takes place in the "coverage territory."

The policy includes several exclusions and exceptions to the exclusions, including:

2. Exclusions

*This insurance does not apply to:*

    a. Expected or Intended Injury

        "[P]roperty damage" expected or intended from the standpoint of the insured. . . .

    b. Contractual Liability

        "[P]roperty damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. *This exclusion does not apply to liability for damages:*

        (1) *Assumed in a contract or agreement that is an "insured contract,"* provided the ... "property damage" occurs subsequent to the execution of the contract or agreement; or

        (2) *That the insured would have in the absence of the contract or agreement.*

        . . . .

    j. Damage to Property

        . . . .

        (5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

        (6) That particular part of any property that must be restored, repaired, or replaced because "your work" was incorrectly performed on it.

    . . . .

        Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard."

(Emphasis supplied.)

The policy defines the terms used. An "insured contract" means a "contract for lease of property." The definitions for "your product" and "your work" are separate but identical.

"Your product" and "your work" include:

    a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance, or use of "your product/work."

    . . . .

"Your work" means:

    a. Work or operations performed by you or on your behalf; and

    b. Materials, parts or equipment furnished in connection with such work or operations.

    . . . .

"Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

    . . . .

"Products-completed operations hazard" includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

    (1) Products that are still in your physical possession; or

    (2) Work that has not yet been completed or abandoned.

The contract between Hottenstein and the construction company states: "All work is to be completed in a workmanlike manner according to standard practices."

■ Hottenstein asserts alternatively that the warranty is an "insured contract" within the meaning of the insurance policy or that, consistent with *Lembke Plumbing & Heating v. Hayutin,* 148 Colo. 334, 366 P.2d 673 (1961), the construction company had a com-

mon law duty apart from the contract to provide services in a workmanlike manner. According to Hottenstein, either approach takes the damages done by the construction company out of the contract exception. She contends that all the damages caused by the construction company, whether characterized by the arbitrator as breach of contract or negligence damages, are then "occurrences" that are covered by the insurance policy.

Additionally, Hottenstein asserts that such a grant of coverage would cause the general coverage grant to conflict with the "products-completed operations hazard." If the construction contract falls within the exception to the contractual liability exception, a breach of the warranty would be indemnified under the policy. However, she asserts that a breach of the warranty would not be covered under the "products-completed operations hazard." Therefore, she contends an ambiguity exists that must be construed against Union and in her favor. We are not persuaded.

The policy defines an "insured contract" as a "contract for a lease of premises." The construction contract does not fall within that definition.

Further, Hottenstein's reliance on *Lembke Plumbing & Heating v. Hayutin* is misplaced. The issue in that case was the extent of the contractor's liability to the homeowner, and the contract at issue was between the contractor and the homeowner. The contractor's faulty plumbing work resulted in the escape of water, saturation of the clay formation beneath the house, and cracks in the floor. The supreme court held that the homeowner had a cause of action for negligence as well as for breach of contract because the contractor had a common law duty to perform its work with due care and skill.

Here, Hottenstein has already obtained a judgment against the construction company for damages for negligence and breach of contract. She cannot now recharacterize her contract damages as negligence damages.

Also, in *Lembke Plumbing & Heating v. Hayutin*, the damage extended far beyond the scope of the contractor's work. Here, Union does not dispute coverage for the unintended and unexpected damage to Hottenstein's roof in the amount of $9,915. Union disputes only coverage for damages arising from the breach of the construction contract.

Hottenstein also relies on *Simon v. Shelter General Insurance Co.*, 842 P.2d 236 (Colo. 1992), and asserts that it is directly on point. In *Simon*, the plaintiff was seriously burned when she fell into a hot tub that had been reconditioned by the defendant's insured. The supreme court held that the exclusion in the body of the policy conflicted with a completed-products operation hazard in the policy endorsements, and the court resolved the ambiguity in favor of the homeowner. However, the contract exclusion in the policy there contained language not present here. The *Simon* policy provided: "[T]his exclusion does not apply to a warranty of ·fitness or quality of the named insured's products or a warranty that work performed by or on behalf of the named insured will be done in a workmanlike manner."

■ Even if we were to find that the exception to the contract exclusion applies, Hottenstein must demonstrate that the construction company's acts in breaching the contract could fall under the definition of an "accident" and therefore constitute a coverable "occurrence." She has not done so.

■ An "accident" is an unanticipated or unusual result flowing from a commonplace cause. *Carroll v. CUNA Mut. Ins. Soc'y*, 894 P.2d 746 (Colo.1995); *Fire Ins. Exch. v. Bentley*, 953 P.2d 1297 (Colo.App. 1998). A breach of contract is not generally an accident that constitutes a covered occurrence. *Pace Constr. Co. v. United States Fid. & Guar. Ins. Co.*, 934 F.2d 177 (8th Cir.1991); *Yegge v. Integrity Mut. Ins. Co.*, 534 N.W.2d 100 (Iowa 1995).

In *Yegge*, as here, a homeowner obtained a judgment against a contractor for poor performance and then sought indemnity from the contractor's insurer. The policy there defined "occurrence" in the same way as the policy here does. The Iowa court held that construing the contractor's breach of contract due to his poor performance as an accident would have converted a general

business liability policy into a performance bond, a risk that the insurer clearly did not undertake.

· Hottenstein's reliance on *Wells Dairy, Inc. v. Travelers Indemnity Co.,* 241 F.Supp.2d 945 (N.D.Iowa 2003), is misplaced. In *Wells Dairy,* customers of an ice cream manufacturer sought indemnity from the manufacturer's insurer when the manufacturer breached its contract to supply the customers. However, the incident that led to the manufacturer's breach was an explosion and fire in its dairy, not poor workmanship.

· Hottenstein also cites *Auto–Owners Insurance Co. v. Toole,* 947 F.Supp. 1557 (M.D.Ala. 1996). There, the court declined to proclaim a broad rule that claims sounding in contract are not occurrences. The court held that a reviewing court should look to the kind of claim asserted, whether it is a tort, contract, or other type of claim. However, the court declined to find a covered occurrence because the claim arose out a business dispute. The court held that finding the breach of a business contract to be an occurrence would distort the purpose of liability insurance policies.

We similarly conclude that poor workmanship constituting a breach of contract is not a covered occurrence here and that the policy's exception to the contract exclusion does not apply. Therefore, the policy is not ambiguous, and the court properly applied the law.

### III.

■ Hottenstein also contends that the question whether Union would indemnify its insured was not at issue in the arbitration, and the arbitration never addressed disputed issues of material fact, such as the intent of the parties when they entered into the insurance contract. She also argues that the arbitration did not address Union's custom and practice in paying similar claims. Union asserts that the arbitration award is binding and precludes relitigating the categorization of damages at this point. We agree with Union.

■ An arbitration award is binding upon the parties, and the merits of an arbitrator's award are not subject to review by the courts. *Foust v. Aetna Cas. & Ins. Co.,* 786 P.2d 450 (Colo.App.1989); *see Checkrite of San Jose, Inc. v. Checkrite, Ltd.,* 640 F.Supp. 234 (D.Colo.1986). The arbitrator is the final judge of all questions of law and fact. *Judd Constr. Co. v. Evans Joint Venture,* 642 P.2d 922 (Colo.1982); *Foust v. Aetna Cas. & Ins. Co., supra.*

■ Principles of collateral estoppel and res judicata may be applied to give preclusive effect to an arbitration award. *Dale v. Guar. Nat'l Ins. Co.,* 948 P.2d 545 (Colo.1997); *see Checkrite of San Jose, Inc. v. Checkrite, Ltd., supra.*

■ Collateral estoppel, or issue preclusion, bars relitigation of an issue if (1) the issue precluded is identical to an issue actually determined in the prior proceeding, (2) the party against whom estoppel is asserted was a party in the prior proceeding, (3) there is a final judgment on the merits in the prior proceeding, and (4) the party against whom estoppel is asserted had a full and fair opportunity to litigate the issue in the prior proceeding.

Here, Hottenstein and the construction company represented by counsel retained by Union were both parties in the arbitration and had a full and fair opportunity to litigate issues surrounding liability for damages due Hottenstein for all claims. The arbitrator made a final award delineating which damages were attributable to breach of contract and negligence, and Hottenstein did not appeal the judgment confirming the arbitrator's award.

Courts in other jurisdictions have similarly concluded that parties were collaterally estopped from relitigating issues determined by an arbitration panel. *See Herriford v. Boyles,* 193 Ill.App.3d 947, 140 Ill.Dec. 769, 550 N.E.2d 654 (1990)(by choosing to proceed to arbitration and in that forum having their damages properly and conclusively determined, plaintiffs are collaterally estopped from relitigating that issue and any other issue necessarily determined in that proceeding); *Bailey v. Metr. Prop. & Liab. Ins. Co.,* 24 Mass.App.Ct. 34, 505 N.E.2d 908 (1987)(party not involved in a prior arbitration may use the award in that arbitration to

bind his opponent if the party to be bound was before the arbitrator and had a full and fair opportunity to litigate the issue, and the issue was actually decided by the arbitrator or was necessary to his decision); *Manu–Tronics, Inc. v. Effective Mgmt. Sys., Inc.,* 163 Wis.2d 304, 471 N.W.2d 263 (Wis.Ct.App.1991)(plaintiff cannot now complain that it was denied a fair and full opportunity to present its claims when it was given the same procedural and substantive rights in the arbitration proceeding that it would have enjoyed in circuit court).

We conclude the trial court properly relied upon both the arbitrator's findings of fact and conclusions of law in granting Union's motion for summary judgment. Although the motion was granted prematurely, that error was harmless because Hottenstein's substantial rights were adequately protected by the arbitration process and de novo appellate review.

## IV.

Because we have concluded that the policy is unambiguous, extrinsic evidence would not be admissible to determine the intent of the parties to the insurance contract. Therefore, further discovery would not be appropriate, and any error in disallowing discovery was harmless.

We thus conclude that since the insurance policy is unambiguous and no genuine issues of material fact exist, the trial court did not err in awarding summary judgment in favor of Union.

The judgment is affirmed.

Judge ROTHENBERG and Judge GRAHAM concur.