GENERAL SECURITY INDEMNITY COMPANY OF ARIZONA, f/k/a Fulcrum Insurance Company, an Arizona corporation, Plaintiff–Appellant,

v.

MOUNTAIN STATES MUTUAL CASUALTY COMPANY, a New Mexico corporation; American Family Mutual Insurance Company, a Wisconsin corporation; Colony National Insurance Company, a Virginia corporation; Farmers Alliance Mutual Insurance Company, a Kansas corporation; Hartford Insurance Company; and Western Heritage Insurance Company, Defendants–Appellees.

Nos. 07CA2291, 07CA2292.

Colorado Court of Appeals, Div. I.

Feb. 19, 2009.

McElroy, Deutsch, Mulvaney & Carpenter, LLP, Laurence M. McHeffey, Todd E. Jaworsky, Jonathan A. Decker, Denver, Colorado, for Plaintiff–Appellant.

Cain & Hayter, LLP, Kristine K. Hayter, Colorado Springs, Colorado, for Defendant–Appellee Mountain States Mutual Casualty Company.

Fisher, Sweetbaum, Levin & Sands, P.C., Jon F. Sands, Chelsey M. Burns, Denver, Colorado, for Defendant–Appellee American Family Mutual Insurance Company.

Campbell, Latiolais & Ruebel, P.C., Colin C. Campbell, Madeline Mellers, Denver, Col-

orado, for Defendant–Appellee Colony National Insurance Company.

Wood, Ris & Hames, P.C., Clayton B. Russell, Denver, Colorado, for Defendant–Appellee Farmers Alliance Mutual Insurance Company.

Fowler, Schimberg & Flanagan, P.C., Katherine Taylor Eubank, Denver, Colorado, for Defendant–Appellee Hartford Insurance Company.

Senter, Goldfarb & Rice, L.L.C., John D. Hayes, Maria T. Lighthall, Denver, Colorado, for Defendant–Appellee Western Heritage Insurance Company.

Opinion by Judge TAUBMAN.

Plaintiff, General Security Indemnity Company of Arizona (GSINDA), appeals the trial court's orders granting summary judgment in favor of six insurance company defendants, American Family Mutual Insurance Company (American), Colony National Insurance Company (Colony), Farmers Alliance Mutual Insurance Company (Farmers), Hartford Insurance Company (Hartford), Mountain States Mutual Casualty Company (Mountain), and Western Heritage Insurance Company (Western). We affirm.

In granting defendants' summary judgment motions, the trial court rejected GSINDA's claims that defendants were obligated to contribute to the defense of GSINDA's insured, Foster Frames, against a third-party construction defect complaint.

The sole issue for review is whether the trial court erred in determining that defendants, who insured Foster Frames' subcontractors (the sub-subcontractors), had no duty to defend Foster Frames as a matter of law because there was no "occurrence" alleged in the underlying complaints of the construction defect litigation. We perceive no error because we conclude that claims of defective workmanship, standing alone, do not constitute an "occurrence." Further, we conclude the broad allegations of "other" or "consequential" damages here are insufficient to give rise to a duty to defend.

## I. Background

In 2003, Summit at Rock Creek Homeowners Association, Inc. (HOA) filed suit against D.R. Horton, Inc.—Denver (DRH) for alleged construction defects in the Summit at Rock Creek housing project. Specifically, the HOA asserted, inter alia, that DRH's negligence resulted in property damage and that DRH breached contractual and implied warranties, which also resulted in property damage. Eventually, the HOA settled its claims against DRH.

After the HOA complaint was filed, DRH filed a third-party indemnification complaint against its subcontractors, including Foster Frames. DRH asserted claims of breach of contract, breach of express warranty, and negligence, among others.

Because GSINDA had insured Foster Frames, it defended it against DRH's third-party complaint. The DRH third-party complaint was later dismissed by the trial court, and the dismissal was affirmed by a division of this court. *See D.R. Horton, Inc.—Denver v. AAA Waterproofing, Inc.*, 2008 WL 4516292 (Colo.App. No. 06CA 1874, Oct. 9, 2008) (not published pursuant to C.A.R. 35(f) ).

In the trial court, Foster Frames filed a fourth-party complaint against the sub-subcontractors, seeking indemnity if it were found liable to DRH.

The trial court stayed proceedings on Foster Frames' fourth-party claims, pending appeal of the dismissal of the DRH complaint.

In this action, GSINDA filed a complaint against the sub-subcontractors' insurance companies, seeking relief for their failure or refusal to share in the costs of the defense of Foster Frames against the DRH third-party complaint. GSINDA sought a declaratory judgment as to the duties owed by defendants with respect to Foster Frames. It also sought equitable contribution, equitable subrogation, equitable indemnity, and damages, in the nature of reimbursement, from defendants for the costs of defending or indemnifying Foster Frames.

GSINDA filed motions for partial summary judgment against defendants, asserting that as a matter of law the insurance policies

issued to the sub-subcontractors obligated defendants to defend Foster Frames against DRH's third-party complaint because the underlying complaints alleged damage arguably covered under the insurance policies. Defendants filed cross-motions for summary judgment.

The trial court granted defendants' cross-motions for summary judgment in six separate orders and determined that defendants were not obligated to defend Foster Frames as a matter of law because the property damage alleged by the HOA was not caused by an "occurrence," as defined in defendants' insurance policies.

The trial court certified its summary judgment orders pursuant to C.R.C.P. 54(b) as final and appealable. GSINDA now appeals.

The trial court stayed all other issues in the insurance coverage action, pending resolution of DRH's appeal of the trial court's dismissal of its third-party complaint.

## II. Coverage of Defective Workmanship Under Insurance Policies

GSINDA contends that the trial court erred in not following *Hoang v. Monterra Homes (Powderhorn) LLC*, 129 P.3d 1028 (Colo.App.2005) *(Monterra Homes), rev'd on other grounds sub nom. Hoang v. Assurance Co. of Am.*, 149 P.3d 798 (Colo.2007), in its determination that the underlying HOA complaint and the DRH third-party complaint did not allege an "occurrence."

More specifically, GSINDA argues that the trial court should have applied *Monterra Homes* to determine that because the sub-subcontractors did not know, intend, or expect property damage to result from their work, the HOA complaint and DRH third-party complaint sufficiently alleged that defective workmanship by DRH resulted from an accident. Thus, in GSINDA's view, the underlying complaints alleged an occurrence that triggered coverage under the policies. We perceive no error in the trial court's orders because we conclude a claim of defective workmanship, standing alone, does not allege an occurrence.

We review a trial court's summary judgment order de novo. *West Elk Ranch,*

*L.L.C. v. United States*, 65 P.3d 479, 481 (Colo.2002). Summary judgment is appropriate when the pleadings and supporting documentation demonstrate that no genuine issue of material fact exists and that the moving party is entitled to summary judgment as a matter of law. *Id.* The nonmoving party is entitled to the benefit of all favorable inferences from the undisputed facts, and all doubts as to the existence of a triable issue of fact must be resolved against the moving party. *Id.*

The sole issue here is whether the underlying complaints—the HOA complaint and the DRH third-party complaint-alleged an occurrence that would trigger a duty to defend under the insurance policies defendants issued to the sub-subcontractors. We conclude that they did not.

We review a trial court's interpretation of an insurance policy de novo, applying ordinary principles of contract interpretation. *Cyprus Amax Minerals Co. v. Lexington Ins. Co.*, 74 P.3d 294 (Colo.2003). We give words in an insurance policy their plain and ordinary meaning, unless the policy evinces a contrary intent. *McGowan v. State Farm Fire & Casualty Co.*, 100 P.3d 521, 522 (Colo.App.2004). We read policy provisions as a whole, rather than in isolation. *Id.* We cannot rewrite, add, or delete provisions in our interpretation. *Id.*

In determining whether a duty to defend exists, a trial court must limit its examination to the four corners of the underlying complaint. *Cyprus Amax Minerals*, 74 P.3d at 299.

An insurer's duty to defend arises when the underlying complaint against the insured alleges any facts that might fall within the coverage of the policy. *Hecla Mining Co. v. New Hampshire Ins. Co.*, 811 P.2d 1083, 1089 (Colo.1991) (citing *Douglass v. Hartford Ins. Co.*, 602 F.2d 934, 937 (10th Cir.1979)).

An insurance company has a duty to defend if the allegations in the complaint could impose liability under the policy. *Id.* (citing *Douglass*, 602 F.2d at 937). Alternatively, an insurance company has a duty to

defend if the allegations in the complaint state a claim which is potentially or arguably within the policy coverage or if there is some doubt as to whether a theory of recovery within the policy coverage has been pleaded. *Id.* (citing *City of Willoughby Hills v. Cincinnati Ins. Co.*, 9 Ohio St.3d 177, 459 N.E.2d 555, 558 (1984)).

With these principles in mind, we review the allegations of the complaint against the sub-subcontractors, which is based on the allegations in the HOA and DRH complaints. Then we review the terms of the insurance policies.

As relevant here, the HOA complaint alleged:

2. The Community's existing 226 units were completed in approximately February 2001.

. . . .

31. On information and belief, these errors [enumerated in ¶ 30 of the complaint], deficiencies and defects, for which defendants are legally liable, have caused, and continue to cause, actual property damage, loss of use and/or other losses to the Association, and consequential damage to, and the loss of use of, various elements of the Project, over time, from the date those areas were first put to their intended use.

The DRH complaint incorporated the same property damage allegations, asserting, "To the extent that the allegations made in the HOA's Complaint are true, which [DRH] denies, any and all damages incurred by the HOA were proximately caused in whole or in part by the breach of contract by the Third–Party Defendants [including Foster Frames] and/or their subcontractors." DRH made this same allegation with regard to the HOA's other claims as well.

The trial court determined that "[t]he HOA complaint, on which the [DRH] Third–Party complaint was based, sought damages for numerous construction defects, but does not claim damages from any event that would qualify as an 'occurrence' under" the policies. Further, the trial court determined that "the [DRH] third-party complaint contains no allegation of the timing of the property damages," and it "contains nothing substantive about the extent or nature of the property damages either."

Our review of the HOA and DRH complaints shows that the claims asserted lay in tort, contract, and breach of warranty. They alleged the contractors, subcontractors, and sub-subcontractors were negligent, breached contractual obligations, and breached various express or implied warranties in constructing the housing project. The claims also alleged general defects, poor workmanship, improper design, and misrepresentation or failure to disclose material facts about the project. Because Foster Frames and the sub-subcontractors at issue in this appeal worked only on the construction aspect of the project, the claims against them are limited to allegations that their poor workmanship caused property damage.

The commercial general liability (CGL) insurance policies defendants issued to the sub-subcontractors limit defense and liability coverage to property damage caused by an "occurrence." The policies issued by American, Western, Mountain, and Colony state:

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies . . . .

b. This insurance applies to "bodily injury" and "property damages" only if:

(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory": and

(2) The "bodily injury" or "property damage" occurs during the policy period.

The language in the Hartford and Farmers policies is substantially the same.

The word "occurrence" is defined in the American, Western, Mountain, Colony, and Hartford policies as: "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." The Farmers policies similarly define "occurrence" as: "an accident and includes repeated exposure to similar conditions."

Thus, all the insurance policies at issue require an accident to trigger an occurrence. Because "accident" is not defined by the

policies, we apply the ordinary definition of "accident" to determine if the underlying complaints alleged an occurrence.

The trial court used *Black's Law Dictionary* to define an accident as "[a]n unintended and unforeseen injurious occurrence; something that does not occur in the usual course of events or that could not reasonably be anticipated." *Black's Law Dictionary* 6 (2d pocket ed.2001). Applying that definition, it concluded that the allegations in the underlying complaints did not concern unanticipated events, and thus were not accidents.

### A. "Occurrence"

Divisions of this court have previously defined "accident" in CGL policies as: "an unanticipated or unusual result flowing from a commonplace cause." *Monterra Homes*, 129 P.3d at 1034; *Union Ins. Co. v. Hottenstein*, 83 P.3d 1196, 1201 (Colo.App.2003); *Fire Ins. Exchange v. Bentley*, 953 P.2d 1297, 1300 (Colo.App.1998). In addition, courts in Colorado and other jurisdictions have considered an accident to be a "fortuitous event." *See American Home Assurance Co. v. AGM Marine Contractors, Inc.*, 379 F.Supp.2d 134, 136 (D.Mass.2005), *aff'd*, 467 F.3d 810 (1st Cir.2006); *McGowan*, 100 P.3d at 525; *Auto-Owners Ins. Co. v. Home Pride Cos.*, 268 Neb. 528, 684 N.W.2d 571, 577 (2004); 9A Lee R. Russ & Thomas F. Segalla, *Couch on Insurance* § 129:4 (3d ed.2005) (fortuity is required to constitute an accident) (collecting cases).

A division of this court previously determined that poor workmanship constituting a breach of contract is generally not an accident that constitutes a covered occurrence. *Hottenstein*, 83 P.3d at 1202. There, the homeowner's underlying complaint against a construction company included breach of contract claims based on defective workmanship. *Id.* at 1198. Although the homeowner was awarded damages for breach of contract, the trial court did not require the defendant's insurance company to indemnify the defendant. On appeal, a division of this court held that the insurance policy precluded coverage of the breach of contract liability for defective workmanship because the breach of contract was not an accident that constituted an occurrence. *Id.* at 1202.

Here, the HOA complaint and the DRH third-party complaint alleged not only breach of contract, but tort and breach of warranty claims as well.

Whether defective workmanship can constitute an occurrence for purposes of both tort and breach of warranty claims is an issue of first impression in Colorado. We are persuaded by the reasoning of courts in other jurisdictions that have extended the *Hottenstein* rule to all claims of poor workmanship, regardless of whether the claims are based on contract, tort, or breach of warranty theories. *See, e.g., Pursell Constr., Inc. v. Hawkeye–Security Ins. Co.*, 596 N.W.2d 67 (Iowa 1999) (making no distinction when analyzing an underlying complaint with both breach of contract and negligence theories where the claim was based on the same allegation of defective workmanship).

■ We conclude the better rule is that a claim for damages arising from poor workmanship, standing alone, does not allege an accident that constitutes a covered occurrence, regardless of the underlying legal theory pled. *See* Ronald M. Sandgrund & Leslie A. Tuft, *Liability Insurance Coverage for Breach of Contract Damages*, 36 Colo. Law. 39, 39 (Feb.2007) (difficulties arise "in jurisdictions that attempt to clearly demarcate coverage between tort and contract liabilities, because some liabilities may sound both in tort and contract"); *cf. Gerrity Co. v. CIGNA Prop. & Cas. Ins. Co.*, 860 P.2d 606, 607 (Colo.App.1993) (duty to defend is determined by factual allegations, not by legal claims).

Next, we address whether general allegations of faulty workmanship constitute an occurrence under the policies at issue here. There is a split among other jurisdictions whether a defective workmanship claim, standing alone, is an "occurrence" under CGL policies. *See* 9A *Couch on Insurance* § 129:4 (collecting cases). *Compare* Clifford J. Shapiro, *Point/Counterpoint: Inadvertent Construction Defects are an "Occurrence" Under CGL Policies*, 22 Constr. Law. 13 (Spring 2002), *with* Linda B. Foster, *Point/Counterpoint: No Coverage Under the*

*CGL Policy for Standard Construction Defect Claims,* 22 Constr. Law. 18 (Spring 2002).

A majority of those jurisdictions has held that claims of poor workmanship, standing alone, are not occurrences that trigger coverage under CGL policies similar to those at issue here. *See J.Z.G. Resources, Inc. v. King,* 987 F.2d 98 (2d Cir.1993); *State Farm Fire & Cas. Co. v. Tillerson,* 334 Ill.App.3d 404, 268 Ill.Dec. 63, 777 N.E.2d 986 (2002); *Pursell Constr.,* 596 N.W.2d 67; *Auto-Owners,* 684 N.W.2d at 576; *Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co.,* 589 Pa. 317, 908 A.2d 888 (2006); *L–J, Inc. v. Bituminous Fire & Marine Ins. Co.,* 366 S.C. 117, 621 S.E.2d 33 (2005); Christopher Burke, *Construction Defects and the Insuring Agreement in the CGL Policy—There is No Coverage for a Contractor's Failure to Do What It Promised,* Prac. L. Inst.: Litig. No. 8412, Insurance Coverage 2006: Claim Trends and Litigation 73, 82 (May 2006) (Burke) (collecting cases) ("Courts from no less than 25 states have adopted the position that there is no coverage [under CGL policies] for construction defect claims.").

Further, a corollary to the majority rule is that an "accident" and "occurrence" are present when consequential property damage has been inflicted upon a third party as a result of the insured's activity. *J.Z.G.,* 987 F.2d at 102; *see, e.g., Auto-Owners,* 684 N.W.2d. at 578–79 (faulty installation of roof shingles that caused consequential damage to roof structures and other buildings was sufficient to constitute an occurrence). As discussed below, we conclude there is no basis to apply this corollary here.

In contrast, a minority of jurisdictions has held that the damage resulting from faulty workmanship is an accident, and thus, a covered occurrence, so long as the insured did not intend the resulting damage. *See Great Am. Ins. Co. v. Woodside Homes Corp.,* 448 F.Supp.2d 1275 (D.Utah 2006); *United States Fire Ins. Co. v. J.S.U.B., Inc.,* 979 So.2d 871 (Fla.2007); *Lee Builders, Inc. v. Farm Bureau Mut. Ins. Co.,* 281 Kan. 844, 137 P.3d 486 (2006); *Travelers Indem. Co. v. Moore & Assocs., Inc.,* 216 S.W.3d 302 (Tenn.

2007); *Lamar Homes, Inc. v. Mid–Continent Cas. Co.,* 242 S.W.3d 1 (Tex.2007); *Am. Family Mut. Ins. Co. v. Am. Girl, Inc.,* 268 Wis.2d 16, 673 N.W.2d 65, 83 (2004).

We are persuaded by the majority rule because it is consistent with *Hottenstein* and *McGowan* and relies on the necessary element of fortuity inherent in the ordinary meaning of the term "accident." Additionally, the Tenth Circuit and Colorado courts have found an "occurrence" only when additional, consequential property damages were alleged as a result of the faulty workmanship. *Adair Group, Inc. v. St. Paul Fire & Marine Ins. Co.,* 477 F.3d 1186, 1187–88 (10th Cir. 2007); *see, e.g., Am. Employer's Ins. Co. v. Pinkard Constr. Co.,* 806 P.2d 954, 955 (Colo. App.1990) (coverage when the poor workmanship in using the wrong material for a roof installation led to the roof collapsing, which caused additional property damage); *Colard v. Am. Family Mut. Ins. Co.,* 709 P.2d 11, 13 (Colo.App.1985) (coverage when the poor workmanship created an exposure to continuous condition, which resulted in additional property damage).

In *McGowan,* a division of this court determined that a CGL policy excluded coverage for faulty workmanship. 100 P.3d at 525. There, the division relied on an explicit exclusion in the insurance policy for faulty workmanship. However, the division explained that CGL policies "normally exclude coverage for faulty workmanship based on the rationale that poor workmanship is considered a business risk to be borne by the policyholder" and such policies are "not intended to be the equivalent of performance bonds." 100 P.3d at 525.

This same rationale has been used in jurisdictions that have adopted the majority rule. For example, in *Pursell Construction,* the Iowa Supreme Court refused to adopt the minority rule because the "fundamental nature of a comprehensive general liability policy" would then hold the insurer as "a guarantor of the insured's performance of the contract," and the insurance policy would thus take on the attributes of a performance bond. 596 N.W.2d at 71; *see also Kvaerner,* 908 A.2d at 899 (the minority rule improperly

converts an insurance policy into a performance bond).

Additionally, the *McGowan* division concluded that poor workmanship is not a "fortuitous event." Other jurisdictions adopting the majority rule have similarly focused on the fortuity required to constitute an accident.

For example, the Nebraska Supreme Court examined a CGL policy similar to the ones at issue here. *Auto–Owners Ins. Co.,* 684 N.W.2d 571. It adopted the majority rule because it concluded that "[t]he fortuity implied by reference to accident or exposure is not what is commonly meant by a failure of workmanship." *Id.* at 577 (quoting *McAllister v. Peerless Ins. Co.,* 124 N.H. 676, 474 A.2d 1033, 1036 (1984)).

The Pennsylvania Supreme Court rejected the minority rule because it relied on "an overly broad interpretation of accident." *Kvaerner,* 908 A.2d at 899 n. 9. The court held that faulty workmanship claims "simply do not present the degree of fortuity contemplated by the ordinary definition of 'accident' or its common judicial construction in this context." *Id.* at 899.

In contrast, the jurisdictions adopting the minority rule have unconvincingly concluded that defective work is unforeseeable, and thus the property damage caused by defective work is an accident that constitutes an occurrence. *See J.S.U.B.,* 979 So.2d at 883; *Moore & Assocs.,* 216 S.W.3d at 309. However, courts adopting the minority rule and applying a broad definition of "accident" do not address the reasoning of courts following the majority rule that an accident must be fortuitous. *See, e.g., J.S.U.B.,* 979 So.2d at 885–86.

Furthermore, the minority rule has been criticized as improperly shifting the burdens of a subcontractor's poor workmanship from the contractor to the insurance company. For example, in *Lamar Homes,* the dissent reasoned that the minority rule would dissuade contractors from avoiding unqualified subcontractors because the insurance companies, not the contractors, would pay for the consequences of a subcontractor's defective workmanship. 242 S.W.3d at 20 (Brister, J., dissenting).

## B. *Monterra Homes*

Despite the large number of jurisdictions following the majority rule, GSINDA argues that we must reverse because the trial court disregarded *Monterra Homes* in determining that the underlying HOA complaint and DRH third-party complaint here did not allege an occurrence. GSINDA asserts that the insureds, Foster Frames and the sub-subcontractors, did not intend defective workmanship, and thus there was an accident that constituted an "occurrence." We disagree. *Monterra Homes* is unpersuasive because (1) it does not address the out-of-state case law discussed above, (2) its standard would render other provisions in defendants' insurance policies superfluous, and (3) it relies on *Hecla's* interpretation of "occurrence," which involved a definition materially different from that in the policies at issue.

### 1. Out–of–State Authority

The *Monterra Homes* division cited only Colorado case law in its discussion. It did not consider the out-of-state authority discussed above, particularly the majority rule, which we have found persuasive.

Thus, the *Monterra Homes* division did not consider whether defective workmanship was accidental based on the concept of fortuity. As discussed above, we are persuaded that defective workmanship is not a fortuitous event that constitutes an accident. Therefore, as a matter of law, faulty work is not included under the definition of "occurrence" in this case.

In *Monterra Homes,* the homeowners had prevailed on their underlying complaint against a builder for property damage. The homeowners brought a garnishment action against the builder's insurer to recover the award of damages. The trial court entered judgment in favor of the homeowners and against the insurance company, and a division of this court affirmed.

That division held that the trial court applied the proper legal standard in determining that there was an occurrence under the

insurance policy because it had focused on the knowledge, actions, and intentions of the insured builder. That division relied on *Hecla* for the proposition that "it is the 'knowledge and intent of the insured' that make injuries or damages expected or intended rather than accidental." 129 P.3d at 1034 (quoting *Hecla*, 811 P.2d at 1088). Then, it affirmed the trial court's finding of an occurrence based on evidence showing that the builder did not intend or expect the property damages resulting from its negligence.

### 2. Superfluous Provisions

■ A reading of the insurance policies at issue that focuses only on the knowledge and intent of the insureds would render other provisions in those policies superfluous. Under Colorado law, we must avoid reading an insurance policy so as to render some provisions superfluous. *See Holland v. Bd. of County Comm'rs*, 883 P.2d 500, 505 (Colo. App.1994) (in construing contracts, courts must give effect to every provision, if possible).

The American, Western, Mountain, Colony, and Hartford policies contain an explicit exclusion for expected or intended damage:

> This insurance does not apply to ... "[b]odily injury" or "property damage" expected or intended from the standpoint of the insured....

Similarly, the Farmers policies state:

> "We" do not pay for "bodily injury," or "property damage": a. which is expected by, directed by, or intended by the "insured"; or b. that is the result of intentional and malicious acts of the "insured."

Applying the *Monterra Homes* "occurrence" definition would render these provisions superfluous, because they already exclude coverage for property damage resulting from expected or intended conduct. *See* Burke, at 94 (defining "occurrence" based on "whether the insured 'expected or intended' to cause the damage ... renders the expected or intended injury exclusion in the policy meaningless"). Significantly, the *Monterra Homes* division did not address whether a similar provision existed in the policy at issue there.

### 3. "Occurrence" in *Hecla*

Additionally, the reliance on *Hecla* was misplaced in *Monterra Homes* because the *Hecla* insurance policy defined "occurrence" differently from its definition in the policies at issue here. *Hecla* interpreted a pre–1986 CGL policy, which had defined "occurrence" as "an accident, including continuous or repeated exposure to conditions, which result in ... property damage, *neither expected nor intended from the standpoint of the insured.*" 811 P.2d at 1086 (emphasis added). The *Monterra Homes* division did not explain how to reconcile the two different "occurrence" definitions. However, the "occurrence" definition at issue here does not focus on the *expectations or intentions* from the insured's standpoint. Thus, our interpretation of the term here need not be limited to the expectations or intentions of the insured.

### C. Consequential Damage

As discussed above, the HOA complaint alleged various construction defects and deficiencies, which were also incorporated into the DRH third-party complaint. Based on the allegations within the four corners of those complaints, the terms of the insurance policies at issue, and the plain meaning of "accident," we conclude the trial court did not err in determining that the allegations did not trigger a duty to defend. Even viewing the allegations in the light most favorable to GSINDA, we are not persuaded that the underlying complaints alleged any damage beyond the work product of Foster Frames or the sub-subcontractors.

In reaching this conclusion, we reject GSINDA's further contention that a duty to defend was triggered by allegations in the HOA complaint of "other losses" and "consequential damage" to "various elements of the Project." At oral argument, GSINDA argued that additional property damage was alleged based on the list of defects contained in the HOA complaint. However, it did not provide any specific instances of the additional or "other property" damage. Further, GSINDA has not identified any allegations of consequential damages in the HOA complaint resulting from defective workmanship that

would apply to Foster Frames or the sub-subcontractors. *See* C.R.C.P. 8(a) (pleading must include short and plain statement of claim showing the pleader is entitled to relief).

The DRH third-party complaint alleged that Foster Frames performed framing, siding installation, window installation, and sliding glass door installation for the project. Similarly, the Foster Frames complaint alleged the sub-subcontractors were hired to "perform framing, window installation, siding and sliding glass door work and other activities at Rock Creek."

The HOA complaint generally alleged faulty workmanship in construction of the entire project, which encompassed numerous contractors, subcontractors, and sub-subcontractors. This appeal is limited to Foster Frames and its sub-subcontractors. However, any potential consequential damage alleged in the HOA complaint concerns work on the project unrelated to Foster Frames, for example, "cracking of interior flooring materials (tile, etc.) from structural foundation movement." There are no allegations that Foster Frames was responsible for placement of the foundation, or for faulty workmanship that could have caused the foundation movement, or resulted in the interior floor cracking. Thus, there was no consequential damage alleged that would trigger a duty to defend.

Neither the DRH third-party complaint nor Foster Frames' fourth-party complaint identified any consequential property damage relating to Foster Frames or the sub-subcontractors. Further, neither on summary judgment nor on appeal has GSINDA specified any allegations of consequential damages for which there was a duty to defend. The general allegations in the HOA complaint, such as "[o]ver-driven nails for the attachment of the horizontal hardboard siding," describe potential defects in the work product itself, not additional or consequential property damage.

GSINDA has cited no authority, and we have found none, holding that such conclusory allegations of consequential damages trigger a duty to defend. We agree with the trial court that the "allegations contain noth-ing substantive about the extent or nature of the property damages."

Therefore, the corollary rule providing coverage for consequential damages is not applicable, and the allegations in the underlying complaints could not impose a duty to defend under defendants' insurance policies as a matter of law.

### III.   Other Issues

Because we affirm the trial court, we need not address the other issues raised by defendants, including whether Foster Frames was an additional insured under the policies and whether the ongoing operations exclusion in certain policies precluded coverage.

The trial court's orders are affirmed.

Judge ROMÁN and Judge LICHTENSTEIN concur.