2012 COA 65

**TCD, INC., Plaintiff–Appellant,**

v.

**AMERICAN FAMILY MUTUAL INSURANCE COMPANY, Defendant–Appellee.**

**No. 11CA1046.**

Colorado Court of Appeals, Div. VII.

April 12, 2012.

Holley, Albertson & Polk, P.C., Dennis B. Polk, Melissa R. Liff, Golden, Colorado, for Plaintiff–Appellant.

Lambdin & Chaney, LLP, Suzanne J. Lambdin, Gregg S. Rich, Denver, Colorado, for Defendant–Appellee.

Opinion by Judge RICHMAN.

¶ 1 Plaintiff, TCD, Inc., appeals the district court's summary judgment in favor of defendant, American Family Mutual Insurance Company, on the ground that the insurance company had no duty to defend TCD under a commercial general liability (CGL) insurance policy. We affirm.

## I. Background

¶ 2 This case arises out of a construction project in Frisco, Colorado. The developer, Frisco Gateway Center, LLC (Gateway), entered into a contract with TCD, the general contractor, to construct a building. TCD entered into a subcontract with Petra Roofing and Remodeling Company (Petra) to install the roof on the building. The subcontract required Petra to "indemnify, hold harmless, and defend" TCD against claims arising out of or resulting from the perform-

ance of Petra's work on the project. The subcontract also required Petra to name TCD as an additional insured on its CGL policy in connection with Petra's work under the subcontract.

¶ 3 The insurance company issued a CGL policy to Petra, with TCD named as an additional insured. Although the anticipated policy period was from August 22, 2006 through August 22, 2007, the policy was cancelled on June 10, 2007 due to nonpayment of the premium.

¶ 4 After a dispute arose between TCD and Gateway regarding payment and performance on the project, TCD filed suit against Gateway and other parties seeking payment, and Gateway asserted counterclaims against TCD for breach of contract, negligence, and violation of the Consumer Protection Act. This underlying action proceeded to arbitration and resulted in a binding award. As an additional insured under the CGL policy, TCD demanded that the insurance company defend and indemnify it in the underlying action, but the insurance company denied coverage.

¶ 5 TCD initiated this case against Petra and the insurance company, asserting claims for declaratory judgment, breach of insurance contract, breach of contract, and negligence. The district court entered a default judgment against Petra, and both the remaining parties moved for summary judgment. The court granted summary judgment on the entirety of the action, in favor of the insurance company, concluding that the counterclaims asserted by Gateway against TCD did not give rise to an obligation to defend or indemnify under the CGL policy.

## II. Standard of Review

¶ 6 We review de novo the district court's grant of summary judgment. *A.C. Excavating v. Yacht Club II Homeowners Ass'n*, 114 P.3d 862, 865 (Colo.2005). Summary judgment is a drastic remedy and should by granted only if there is a clear showing that no genuine issue as to any material fact exists and the moving party is entitled to judgment as a matter of law. *AviComm, Inc. v. Colo. Public Util. Comm'n*, 955 P.2d 1023, 1029 (Colo.1998).

¶ 7 If the moving party meets its initial burden of showing that there is no genuine issue of material fact, the burden shifts to the nonmoving party to establish that there is a triable issue of fact. *Id.* "The nonmoving party is entitled to all favorable inferences that may be drawn from the undisputed facts, and all doubts as to whether a triable issue of fact exists must be resolved against the moving party." *Id.*

## III. Issues on Appeal

¶ 8 TCD contends that Gateway's counterclaims are sufficient to raise a genuine issue as to whether the insurance company had a duty to defend it against those claims. In the alternative, TCD contends that it is entitled to have us consider evidence not contained in the counterclaims that purportedly shows that the insurance company had a duty to defend. TCD also contends that section 13–20–808, C.R.S.2011, a statute enacted nearly three years after the CGL policy was cancelled, requires reversal in this case. We reject each contention in turn.

### A. Gateway's Counterclaims

¶ 9 TCD contends that Gateway's counterclaims constitute an allegation of "property damage," which is covered under the CGL policy. We disagree.

¶ 10 Whether there is a duty to defend is a question of law we review de novo. *Carl's Italian Restaurant v. Truck Ins. Exchange*, 183 P.3d 636, 639 (Colo.App.2007). We also review de novo the interpretation of an insurance contract. *Compass Ins. Co. v. City of Littleton*, 984 P.2d 606, 613 (Colo. 1999).

¶ 11 "[An] insurer has a duty to defend unless the insurer can establish that the allegations in the complaint are solely and entirely within the exclusions in the insurance policy." *Hecla Mining Co. v. New Hampshire Ins. Co.*, 811 P.2d 1083, 1090 (Colo.1991). "We give insurance policy terms their fair, natural, and reasonable meaning." *Bainbridge, Inc. v. Travelers Casualty Co.*, 159 P.3d 748, 753 (Colo.App.2006). In addition, we construe coverage provisions

in an insurance contract liberally in favor of the insured to provide the broadest possible coverage. *Fire Ins. Exchange v. Bentley,* 953 P.2d 1297, 1300 (Colo.App.1998).

¶ 12 Here, pursuant to the CGL policy, the insurance company is obligated to "pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." The policy defines "property damage" as

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

■ ¶ 13 Defense and liability coverage in CGL policies issued to subcontractors generally is limited to property damage caused by an "occurrence." *General Security Indemnity Co. v. Mountain States Mutual Casualty Co.,* 205 P.3d 529, 533 (Colo.App.2009), *superseded by* § 13–20–808. In this policy, an "occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Thus, the policy requires an "accident" to trigger an "occurrence." *See id.*

■ ¶ 14 The counterclaims made by Gateway against TCD that are relevant to Petra's work on the project are the following:

14. .... TCD hired a roofer who improperly installed the roof, installed a roof that would not pass inspection for certificate of occupancy[,] was inferior to the contract specifications, and walked off the job.

15. TCD negligently purchased materials for the roofer that the roofer was not certified to install, were from two different manufacturers, therefore not warrantable, and did not meet architects/owners specs.

16. TCD failed to correct the defective roof, tried to get the Town of Frisco to alter its standards to approve an inferior roof, so that Developer had to correct the roof by hiring United Materials.

17. In addition to failing to complete the project, substantial amounts of work were not completed in a "workmanlike" manner as is customary in the building trades, including but not limited to failure to adhere to plans and specifications for the roof, defective roof installation, installing defective or incorrectly installed counterflashings, defective metal flashings at the façade, no waterproof membrane under end caps, incorrect installation of certain doors, improper and incomplete drywall, painting contrary to specifications when the painter walked off the job, incorrectly installing the elevator and incorrect windows.

18. TCD certified the roofing contractor for payment and claimed [its] associated fee when [it] should have known that the sub-contract was not followed. Also, [it] failed to take legal action against the roofer.

¶ 15 The gist of these counterclaims is that Petra improperly installed the roof, resulting in a defective roof and causing TCD to breach its contract with Gateway. These allegations sound in contract and tort law and do not fit within the fair, natural, and reasonable meaning of "property damage." *See Union Ins. Co. v. Hottenstein,* 83 P.3d 1196, 1201 (Colo.App.2003) ("A breach of contract is not generally an accident that constitutes a covered occurrence.").

¶ 16 Further, "a claim for damages arising from poor workmanship, standing alone, does not allege an accident that constitutes a covered occurrence, regardless of the underlying legal theory pled." *General Security,* 205 P.3d at 534; *see also Continental Western Ins. Co. v. Shay Construction, Inc.,* 805 F.Supp.2d 1125, 1130–31 (D.Colo.2011); *Union Ins. Co.,* 83 P.3d at 1202. As noted by the *General Security* division, a majority of jurisdictions has adopted this position. 205 P.3d at 535–36 (adopting the majority position and contrasting a CGL policy with a performance bond).

¶ 17 A corollary to the majority position is that "an 'accident' and 'occurrence' are present when consequential property damage has been inflicted *upon a third party* as a result of the insured's activity." *Id.* at 535 (empha-

sis added); *see also Greystone Construction, Inc. v. National Fire & Marine Ins. Co.,* 661 F.3d 1272, 1282 (10th Cir.2011) ("We predict the Colorado Supreme Court would construe the term 'occurrence,' as contained in standard-form CGL policies, to encompass unforeseeable damage to nondefective property arising from faulty workmanship."); *United Fire & Casualty Co. v. Boulder Plaza Residential, LLC,* 633 F.3d 951, 957 (10th Cir. 2011). Notably absent from Gateway's counterclaims is any specific allegation that Petra caused damage beyond its own work product. *See General Security,* 205 P.3d at 537–38 ("[C]onclusory allegations of consequential damages [do not] trigger a duty to defend."). Because Gateway's counterclaims do not allege consequential damage to a third party or nondefective property, there is no basis to apply this corollary here.

¶ 18 Nor do the counterclaims trigger coverage by framing an "occurrence" that caused the alleged property damage. *See id.* at 533. The policy defines an "occurrence" as an "accident" but does not define the latter. Divisions of this court have defined an "accident" as "an unanticipated or unusual result flowing from a commonplace clause." *Union Ins. Co.,* 83 P.3d at 1201; *Fire Ins. Exchange,* 953 P.2d at 1301. The allegations here are essentially allegations of poor workmanship constituting a breach of contract and do not fit within the reasonable meaning of an "accident." *See Greystone Construction,* 661 F.3d at 1284 ("[I]njuries flowing from improper or faulty workmanship constitute an occurrence so long as the resulting damage is to nondefective property, and is caused without expectation or foresight."). Thus, the insurance company was not obligated to defend TCD on the counterclaims.

### B. The Complaint Rule

¶ 19 TCD argues that we should broaden or extend the complaint rule, also called the "four corners" rule, and allow it to offer evidence outside of the counterclaims to determine the insurance company's duty to defend in this case. We are not persuaded to do so.

¶ 20 The Colorado Supreme Court has "consistently held that an insurer's duty to defend arises solely from the complaint in the underlying action." *Cotter Corp. v. Am. Empire Surplus Lines Ins. Co.,* 90 P.3d 814, 827 (Colo.2004); *see, e.g., Compass Ins. Co.,* 984 P.2d at 615; *Hecla Mining,* 811 P.2d at 1090.

> Determining the duty to defend based on the allegations contained within the complaint comports with the insured's legitimate expectation of a defense, and prevents the insurer from evading coverage by filing a declaratory judgment action when the complaint against the insured is framed in terms of liability coverage contemplated by the insurance policy.

*Hecla Mining,* 811 P.2d at 1090.

¶ 21 In accord with other divisions of this court, we limit our consideration here to the counterclaims against TCD and the insurance policy at issue. *See, e.g., Carl's Italian Restaurant,* 183 P.3d at 638–39; *Bainbridge,* 159 P.3d at 753; *Fire Ins. Exchange,* 953 P.2d at 1300.

¶ 22 In support of applying the "four corners" rule less stringently, TCD cites two cases interpreting Colorado law, *Apartment Investment and Management Co. (AIMCO) v. Nutmeg Insurance Co.,* 593 F.3d 1188 (10th Cir.2010), and *Pompa v. American Family Mutual Insurance Co.,* 520 F.3d 1139 (10th Cir.2008), where the Tenth Circuit predicted that the Colorado Supreme Court would recognize two narrow exceptions to the complaint rule. Yet the existence of these exceptions, which TCD concedes are not directly applicable to this case, does not persuade us to rewrite the complaint rule in the manner TCD suggests. *See Boulder Plaza Residential,* 633 F.3d at 961 (noting that Colorado courts have not ratified the exceptions recognized in *AIMCO* and *Pompa* and declining to broaden the complaint rule beyond those exceptions).

### C. Section 13–20–808

¶ 23 In May 2010, the legislature enacted House Bill 10–1394, which is codified as section 13–20–808, to express its disapproval of *General Security.* The statute provides, in relevant part, that

[i]n interpreting a liability insurance policy issued to a construction professional, a court shall presume that the work of a construction professional that results in property damage, including damage to the work itself or other work, is an accident unless the property damage is intended and expected by the insured.

§ 13–20–808(3), C.R.S.2011. TCD argues that we should apply section 13–20–808, which became effective on May 21, 2010, in this case. We disagree that the statute applies here.

¶ 24 We first conclude, contrary to TCD's argument, that the statute is not retroactive. The applicability clause of the enacting legislation provides that section 13–20–808 "applies to all insurance policies currently in existence or issued on or after [May 21, 2010]." Ch. 253, sec. 3, 2010 Colo. Sess. Laws 1128. TCD contends that because the phrase "currently in existence" is ambiguous, we should apply rules of statutory construction to determine whether the General Assembly intended the statute to apply retroactively. However, we do not find this phrase to be ambiguous in this context. Further, Colorado statutes are "presumed to be prospective in operation," § 2–4–202, C.R.S. 2011, and nothing in the applicability clause suffices to overcome that presumption. Thus, we conclude that the General Assembly did not intend section 13–20–808 to have retroactive effect. See Greystone Construction, 661 F.3d at 1280 (citing cases refusing to apply the statute retroactively); see also City of Colorado Springs v. Powell, 156 P.3d 461, 464 (Colo.2007) ("Absent legislative intent to the contrary, we presume a statute operates prospectively.").

¶ 25 Alternatively, TCD argues that section 13–20–808 applies here because the CGL policy, which provided coverage for occurrences from August 22, 2006 through June 10, 2007, was "currently in existence" at the time the underlying lawsuit was filed. Citing Village Homes of Colorado, Inc. v. Travelers Casualty & Surety Co., 148 P.3d 293, 296 (Colo.App.2006), aff'd, 155 P.3d 369 (Colo. 2007), TCD correctly points out that an occurrence policy may allow for notice of claims after the policy period. See Hoang v. Assur-

ance Co., 149 P.3d 798, 802 (Colo.2007) ("An 'occurrence policy' confers coverage for injury or damage that occurs during the policy period, regardless of when the claim is presented."). However, we disagree with TCD's contention that an occurrence policy, which may continue in effect after the policy period ends, necessarily is "currently in existence."

¶ 26 A plain reading of "currently in existence" supports the conclusion that section 13–20–808 applies only to policies for which the policy period had not yet expired on May 21, 2010. See Greystone Construction, 661 F.3d at 1280 ("[T]he General Assembly would have more clearly stated its intentions if it desired the 'accident' definition to apply retroactively to expired policies that still may be subject to claims for occurrences within the policy period."). Moreover, Village Homes is inapposite because that division "did not purport to resolve the question whether an insurance policy that continues to cover any occurrences arising within the policy period can be modified by legislation after the expiration of the policy period." Id. at 1281. Therefore, we decline to apply section 13–20–808 to the CGL policy here.

¶ 27 The judgment is affirmed.

Judge ROMÁN and Judge MILLER concur.