**Paula K. BUMPERS, Plaintiff–Appellant,**

v.

**GUARANTEE TRUST LIFE INSURANCE COMPANY, Defendant–Appellee.**

**No. 90CA1267.**

Colorado Court of Appeals, Div. II.

Aug. 1, 1991.

As Modified on Denial of Rehearing Oct. 10, 1991.

Certiorari Denied March 10, 1992.

---

* Sitting by assignment of the Chief Justice under provisions of the Colo. Const. art. VI, Sec. 5(3), and § 24-51-1105, C.R.S. (1988 Repl.Vol. 10B).

Anderson, Sommermeyer, Wick & Dow, Samuel L. Anderson, Fort Collins, for plaintiff-appellant.

Fischer, Howard & Francis, Stephen E. Howard, Fort Collins, for defendant-appellee.

Opinion by Judge SMITH.

Plaintiff, Paula Bumpers, appeals the summary judgment granted in favor of defendant, Guarantee Trust Life Insurance Company (Guarantee), on her claim for reimbursement of medical and surgical expenses totalling $7,279.40. We reverse and remand with directions.

The material facts are not in dispute. Bumpers was a student at Colorado State University (CSU) from August 1984 through May 1989. At the beginning of each school year, she purchased a one-year health insurance policy from CSU, underwritten by Guarantee.

By their terms, each of the five policies Bumpers purchased commenced on the first day of registration or the date of enrollment (whichever was later) and terminated the first day of classes the next fall semester. Each policy contained two provisions pertinent here. The first, the preexisting condition provision, stated:

"Benefits are provided for a sickness or injury which has not been treated or for which no expense has been incurred within six months immediately preceding the effective date of coverage. If there has been treatment or expense during this time, the insured person must be covered for six continuous months after the effective date of coverage during which no treatment or expense has been incurred in order to qualify for benefits for such injury or sickness."

The second, the 52–week provision, stated:

"Benefits are payable for covered expenses incurred within 52 weeks from the date of first medical treatment/expense for an injury or sickness which is the basis of the claim."

In October 1984, while her initial policy was in effect, Bumpers sustained facial injuries, including a fracture to her nasal septum. Related medical expenses, incurred that October and November were paid by Guarantee.

Apparent complications necessitated subsequent surgical and medical treatment in December 1985, May 1986, June 1987, and December 1988. Expenses for these treatments totalled $7,279.40.

In December 1989, Bumpers sought reimbursement for these expenses under her various annual policies. Guarantee denied reimbursement and the matter was submitted to mandatory arbitration under C.R.C.P. 109.1. After the arbitrator denied Bumpers' claim, she filed a demand for a trial de novo. Both parties then filed motions for summary judgment.

Based on the undisputed facts, the trial court found that the expenses Bumpers incurred in the policy years of 1985–86 and 1986–87 did not qualify based on the initial 1984 policy's 52–week provision and, thus, concluded, as a matter of law, that Bumpers' expenses were not reimbursable. On this basis, the trial court granted summary judgment in favor of Guarantee.

It is implicit in the above finding and conclusion that the trial court interpreted the 52–week provision as forever precluding, after 52 weeks, any claim which might be related back to the 1984 injury, even though the need and claim for such treat-

ment might arise in subsequent policy periods. The effect of such ruling is to create an unwritten exclusion in all future policies for any illness or accident which may have originally occurred during *any* previous policy period if more than 52 weeks have elapsed since the first treatment, or incurrence of expense therefore.

The sole issue on appeal is whether this interpretation of the 52-week provision was proper. We conclude that it was not.

■ The interpretation of an insurance contract, like any other written contract, is a matter of law. Thus, on review, this court is not bound by the findings and conclusions of the trial court. *Eisenhower Hospital Osteopathic v. Taylor*, 43 Colo. App. 498, 609 P.2d 1114 (1979).

■ Here, the evidence is clear and, indeed, undisputed, that each of the policies Bumpers purchased was a separate *annual* policy which took effect the first day of registration in the fall and terminated the first day of classes the following fall semester. And, despite an amendment rider offering the option to "renew" for further consecutive annual terms, the separate policies attached to Guarantee's answer brief are evidence that all parties understood that Bumpers' policies were structured to coincide with the school year and that each fall her premium payment purchased a *new* policy complete with *new* terms and conditions which would automatically terminate the following fall.

Since each policy Bumpers purchased from Guarantee was, indeed, a separate and independent contract of insurance, the meaning of each policy's 52-week provision must be determined in a manner consistent with the principle that each contract must be interpreted according to its *own terms*. *Security Mutual Casualty Co. v. Century Casualty Co.*, 531 F.2d 974 (10th Cir.1976), *cert. denied*, 429 U.S. 860, 97 S.Ct. 161, 50 L.Ed.2d 137 (1976).

The trial court's interpretation, however, reaches far beyond the scope of the policy in which it is contained and makes all future policies, no matter how far in the future, contingent upon events occurring during prior policies. Clearly, the date upon which the trial court focused, 52 weeks after commencement of treatment for the 1984 injury, was relevant in determining benefits under the 1984–1985 policy. Nonetheless, except as it related to the new six month pre-existing condition provision of the subsequent policy, such date was irrelevant in evaluating a claim arising under a new policy period and governed by a *new* 52-week provision. Indeed, the annual character of Bumpers' policies made her a "new person" at the commencement of each policy period. The trial court's interpretation of the 52-week provision is inconsistent with this concept.

Additionally, since it generally bars recovery of claims resulting from *any* covered injury or sickness that may have first occurred during *any* previous policy period, the trial court's interpretation renders ineffective each policy's clear and unambiguous six month pre-existing condition provision. And, moreover, it leaves uncertain a critical term, that is, the limitation, if any, on *prospective* coverage. Thus, contrary to fundamental principles of contract interpretation, by permitting the terms of one policy to modify the express terms of all future policies, the trial court's construction neither harmonizes nor gives effect to relevant and material policy provisions. *See KN Energy, Inc. v. Great Western Sugar Co.*, 698 P.2d 769 (Colo.1985), *cert. denied*, 472 U.S. 1022, 105 S.Ct. 3489, 87 L.Ed.2d 623 (1985).

In sum, we hold, as a matter of law, that the 52-week provision at issue must be interpreted to provide 52 weeks of prospective coverage for any sickness or injury which occurs and is the basis for a claim *during the annual policy period*, unless such sickness or injury falls within the express pre-existing condition provision of the applicable annual policy.

Here, Bumpers' subsequent expenses arose within an annual policy period and fell outside the applicable policy's pre-existing condition provision. Thus, we hold that the trial court erred in denying Bumpers' claim for reimbursement solely on the basis of the 52-week provision in the original policy.

We note that in, its motion for summary judgment, Guarantee raised the issues of

lack of timely notice and of subrogation as additional grounds barring Bumpers' claim. The trial court made no determination concerning whether there were factual disputes relative to these issues, nor did it rule thereon. Because the trial court did not address these issues, and because they may involve factual disputes, we are unable to address them on appeal.

The judgment entered in favor of Guarantee is reversed on the general issue of coverage, and the cause is remanded with directions to the trial court to rule on the remaining issues raised by Guarantee in its motion for summary judgment.

REED, J., and ENOCH *, J., assigned, concur.