Dianne McGOWAN and Donald McGowan, Plaintiffs–Appellants and Cross–Appellees,

v.

STATE FARM FIRE AND CASUALTY COMPANY, Garnishee–Appellee and Cross–Appellant.

No. 03CA0025.

Colorado Court of Appeals, Div. III.

April 22, 2004.

Certiorari Denied Oct. 25, 2004.

Roberts Levin & Patterson, PC, Bradley A. Levin, Jeremy A. Sitcoff, Denver, Colorado, for Plaintiffs–Appellants and Cross–Appellees.

Cross, Sands & Sares, P.C., Jon F. Sands, Denver, Colorado, for Garnishee–Appellee and Cross–Appellant.

Opinion by Judge KAPELKE.

In this dispute concerning exclusions in contractor insurance policies, plaintiffs, Dianne and Donald McGowan, appeal the trial court's judgment denying their traverse to the answer filed by defendant, State Farm Fire and Casualty Company, to a writ of garnishment they issued. State Farm has filed a conditional cross-appeal. We affirm.

In June 1994, the McGowans contracted with Eagle Summit Construction Co., Inc. to build a house for them. Eagle Summit had completed the excavation, foundation, and framing of the house and had constructed three levels encompassing 3,200 square feet, when the McGowans discovered that the house had several structural problems. Specifically, the McGowans noticed bending studs, cut trusses, and warped boards, and they also observed that the house was swaying as a result of problems with the foundation supports. Dissatisfied with Eagle Summit's workmanship, the McGowans terminated the contract. They then engaged another contractor to make the necessary repairs and to complete construction of the house.

In May 1995, the McGowans brought a lawsuit (the underlying action) against Eagle Summit, alleging claims of negligence, fraud, breach of contract, and conversion.

State Farm had issued two consecutive one-year contractors policies to Eagle Summit. The first policy was for the term of March 30, 1994 through March 30, 1995, and the second for the term of March 30, 1995 through March 30, 1996. As relevant here,

the policy in effect during the construction of the McGowans' house covered Eagle Summit for sums it was legally obligated to pay as damages because of damage to property caused by an "occurrence" during the policy period.

In August 1998, counsel for the McGowans notified State Farm of the underlying action and agreed to provide any further information required by State Farm. Counsel also provided the name of Eagle Summit's former attorney.

In November 1998, State Farm wrote a letter to the former president of Eagle Summit, informing him that State Farm was denying coverage for the claims involved in the underlying action and also declining to defend, based on policy exclusions and on late notice. State Farm mailed the letter to the individual, however, rather than to the address listed on the policy issued to Eagle Summit, and the letter was apparently returned, unclaimed, to State Farm.

Also in November 1998, the McGowans obtained a default judgment against Eagle Summit for $399,857.93.

In June 1999, the McGowans attempted to collect their judgment against Eagle Summit through a garnishment of insurance proceeds from State Farm. In its answer to the writ of garnishment, State Farm denied owing any money to Eagle Summit. In their traverse to the answer, the McGowans asserted that State Farm had owed Eagle Summit a duty under the policy with respect to the claims in the underlying action.

Following a hearing on the traverse, the trial court concluded that the McGowans' claims in the underlying action were excluded from coverage under provisions of the policy. In denying the McGowans' traverse, the trial court found that the damages alleged by the McGowans in the underlying complaint were for "property damage" under the policy and that the McGowans had sufficiently alleged that the damage had resulted from an "occurrence." The court nevertheless concluded that State Farm owed no duty of indemnity to Eagle Summit by reason of exclusions of the policy.

I.

■ The McGowans contend that the trial court erred in holding that exclusions in the policy precluded coverage for their claims against Eagle Summit. We disagree.

■ We review a trial court's interpretation of an insurance policy de novo and apply ordinary principles of contract interpretation. Words in a policy are thus accorded their plain and ordinary meaning, unless the policy evinces a contrary intent. Further, policy provisions should be read as a whole, rather than in isolation. We may not rewrite, add, or delete provisions to extend or restrict coverage. However, ambiguous provisions are to be construed in favor of affording coverage to the insured. *Cyprus Amax Minerals Co. v. Lexington Ins. Co.*, 74 P.3d 294, 299 (Colo.2003); *Leprino v. Nationwide Prop. & Cas. Ins. Co.*, 89 P.3d 487, 2003 WL 22509379 (Colo.App. No. 02CA1863, Nov. 6, 2003).

■ Exclusionary clauses exempting the insurer from providing coverage in certain circumstances must be written in clear and specific language and construed in favor of coverage. *Bohrer v. Church Mut. Ins. Co.*, 965 P.2d 1258, 1262 (Colo.1998). The insurer therefore has the burden of demonstrating that the policy exclusion applies in the particular circumstances at issue and that it is not susceptible of any other reasonable interpretation. *Compass Ins. Co. v. City of Littleton*, 984 P.2d 606, 614 (Colo.1999).

■ The duty to defend and the duty to indemnify are separate and distinct obligations of the insurer. *Hecla Mining Co. v. New Hampshire Ins. Co.*, 811 P.2d 1083, 1086 n. 5 (Colo.1991). In determining whether a duty to defend exists, a trial court must restrict its examination to the four corners of the underlying complaint. *Cyprus Amax Minerals Co. v. Lexington Ins. Co., supra*, 74 P.3d at 299.

■ Whether an indemnity obligation exists depends upon the nature of the ultimate verdict, judgment, or settlement against the insured and typically cannot be determined until the claims involved in the underlying action have been resolved. *Cyprus Amax*

*Minerals Co. v. Lexington Ins. Co., supra*, 74 P.3d at 301.

■ In determining whether an insurer has a duty to indemnify, a court must begin by liberally examining the underlying complaint, construing broadly the alleged facts, legal claims, and claims for relief so as to provide coverage to the greatest extent possible. If the insured makes no colorable claim invoking a duty to indemnify by the insurer, coverage presumably does not exist. However, if a broad reading of the complaint indicates that coverage may possibly attach, additional evidence supporting or defeating the existence of coverage, including the factual record developed at trial and the ultimate judgment, may be taken into account. *Cyprus Amax Minerals Co. v. Lexington Ins. Co., supra*, 74 P.3d at 297, 301.

Whether State Farm owes a duty of indemnification to Eagle Summit depends on the extent of coverage under the policy. As pertinent here, the policy provides:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of ... property damage ... to which this insurance applies.... This insurance applies only:
>
> 1. to bodily injury or property damage caused by an occurrence which takes place in the coverage territory during the policy period.
>
> . . .
>
> property damage means:
>
> a. physical injury to or destruction of tangible property, including all resulting loss of use of that property; or
>
> b. loss of use of tangible property that is not physically injured or destroyed, provided such loss of use is caused by physical injury to or destruction of other tangible property;
>
> . . .
>
> occurrence means:
>
> a. an accident, including continuous or repeated exposure to substantially the same general harmful conditions which result in ... property damage.

The policy specifically excludes coverage for:

> 11. property damage to:
>
> e. that particular part of real property on which you or any contractor or subcontractor working directly or indirectly on your behalf *is performing operations,* if the property damage arises out of those operations; or
>
> f. that particular part of any property that must be *restored, repaired or replaced* because your work was *incorrectly* performed on it. This part of this exclusion does not apply to property damage included in the products-completed operations hazard.
>
> . . .
>
> your work:
>
> a. means:
>
> (1) work or operations performed by you or on your behalf; and
>
> (2) materials, parts or equipment furnished in connection with such work or operations.
>
> . . .
>
> products-completed operations hazard:
>
> a. includes all ... property damage arising out of your product or your work *except products that are still in your physical possession or work that has not yet been completed or abandoned.* ...
>
> Your work will be deemed completed at the earliest of the following times:
>
> (1) when *all* of the work *called for in your contract* has been *completed;*
>
> . . .
>
> (3) when that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.
>
> Work that may need service, maintenance, correction, repair or replacement, *but*

*which is otherwise complete,* will be treated as completed.

(Emphasis added.)

■ Exclusion 11(f) excludes from coverage damage to property that must be restored, repaired, or replaced because of incorrectly performed work by the contractor or someone acting on its behalf. Policy exclusions such as this one have been described as "faulty workmanship" provisions. *See Century Indem. Co. v. Golden Hills Builders, Inc.,* 348 S.C. 559, 561 S.E.2d 355, 358 (2002)(involving a policy exclusion with language mirroring that here).

■ Comprehensive general liability policies normally exclude coverage for faulty workmanship based on the rationale that poor workmanship is considered a business risk to be borne by the policyholder, rather than a "fortuitous event" entitling the insured to coverage. 9 Lee R. Russ & Thomas F. Segalla, *Couch on Insurance* § 129:11, at 129–21 (3d ed.1995) (citing *Bangert Bros. Constr. Co. v. Americas Ins. Co.,* 888 F.Supp. 1069 (D.Colo.1995), *aff'd without op.,* 66 F.3d 338, 1995 WL 539479 (10th Cir.1995)); *see Century Indem. Co. v. Golden Hills Builders, Inc., supra,* 561 S.E.2d at 358 (commercial general liability insurance policies generally are not intended to insure the risks associated with the "normal, frequent, or predictable consequences of doing business, and which business management can and should control or manage," quoting Rowland H. Long, *The Law of Liability Insurance* § 3.06[1] (2001)). General liability insurance policies such as the one at issue here are not intended to be the equivalent of performance bonds. *Kvaerner Metals Division v. Commercial Union Ins. Co.,* 825 A.2d 641, 655 (Pa.Super.Ct.2003)(involving policy exclusion with nearly identical language); *cf. Union Ins. Co. v. Hottenstein,* 83 P.3d 1196 (Colo. App.2003).

Exclusion 11(f) is written in clear and specific language and is unambiguous. *See Alverson v. Northwestern Nat'l Cas. Co.,* 559 N.W.2d 234, 236 (S.D.1997) (finding policy exclusion with nearly identical language unambiguous).

Even under a broad reading of the complaint in the underlying action, the McGowans' claims are excluded from coverage under Exclusion 11(f). In their complaint, the McGowans alleged that "[t]he structure currently contains several cut trusses ... [and] is replete with other errors." They further alleged that they had "procured outside bids to *complete the house according to [their] original plans* ... [and had] received no estimate of less than $200,000 to *complete the house as contracted.*" They sought damages "in an amount sufficient to pay for the building of [their] home per plans, as required by the contract."

The McGowans were therefore seeking to recover the expenditures they were required to make to repair the damage caused by Eagle Summit's faulty and incomplete work. Thus, their claims fall squarely within Exclusion 11(f), as the trial court properly concluded.

We reject the McGowans' assertion that the reasonable expectations doctrine should be applied in interpreting the policy provisions at issue here. That doctrine has been applied to protect policyholders from policy exclusions that are either not readily apparent or ambiguous. *See Davis v. M.L.G. Corp.,* 712 P.2d 985 (Colo.1986); *TerraMatrix, Inc. v. United States Fire Ins. Co.,* 939 P.2d 483, 488 (Colo.App.1997); *Spaur v. Allstate Ins. Co.,* 942 P.2d 1261 (Colo.App.1996). Because the policy exclusion here was evident and unambiguous, we perceive no basis for applying that doctrine.

■ Further, the "products-completed operations hazard" exception to Exclusion 11(f) is inapplicable to the circumstances here. As noted, work must be "deemed completed" for the property damage at issue to constitute a products-completed operations hazard. Although the McGowans' house was completed at the time the judgment was entered against Eagle Summit, the products-completed operations hazard exception applies only if the work at issue was completed *when the damage occurred. See Am. States Ins. Co. v. Powers,* 262 F.Supp.2d 1245, 1251 (D.Kan.2003)(the products-completed operations hazard exception applies solely to work that was complete at the time of the dam-

age); *Spears v. Smith,* 117 Ohio App.3d 262, 690 N.E.2d 557, 560 (1996).

Here, numerous allegations in the complaint in the underlying action referred to the McGowans' need to hire other contractors to "complete the house as contracted." Because the work was allegedly not completed when the damage occurred, the property damage does not fit within the policy definition of a products-completed operations hazard. *See Glens Falls Ins. Co. v. Donmac Golf Shaping Co.,* 203 Ga.App. 508, 417 S.E.2d 197, 199 (1992)(insurance coverage dispute involving nearly identical exclusion provision). Accordingly, the products-completed operations hazard provision does not restore coverage, and Exclusion 11(f) is operative.

While the McGowans assert that coverage should at least apply to those areas of the house that had been completed before the damage occurred, the plain language of the products-completed operations hazard provision belies that assertion. The provision states that the work is considered complete "when *all* of the work called for in your contract has been completed." *See Century Indem. Co. v. Golden Hills Builders, Inc., supra,* 561 S.E.2d at 360 n. 5 (emphasis added). Because the McGowans alleged that the house was not completed according to the contract specifications when the damage occurred, the products-completed operations hazard exception does not apply under the circumstances here.

Because coverage by State Farm was thus not implicated even by a liberal reading of the underlying complaint, we need not examine the factual record developed at the default judgment hearing or the ultimate judgment itself. We note, nevertheless, that the factual record and the ultimate default judgment indicate that no factual or legal basis exists for finding an indemnity obligation on the part of State Farm.

The trial court's award of $399,857.93 in damages to the McGowans pertained exclusively to the costs the McGowans incurred in making repairs caused by Eagle Summit's faulty work. In itemizing the damage award to the McGowans, the trial court specifically awarded amounts for "Cost to Complete House to Original Plans," "Cost to Complete tongue and [groove] ceiling throughout house," out-of-pocket expenses, construction loans, and attorney fees and costs. Because the court awarded damages for the costs of repairs to correct construction errors and to complete the house according to contract specifications, Exclusions 11(f) applies and defeats coverage under the policy.

Because no policy coverage existed for the judgment entered against Eagle Summit in the underlying action, the trial court properly held that State Farm had no indemnity obligation to Eagle Summit. Accordingly, the trial court properly denied the McGowans' traverse.

## II.

The McGowans contend that State Farm either waived the right to dispute coverage or is estopped from doing so. We reject the contention.

The McGowans argue that by failing to send its letter denying coverage to Eagle Summit's registered agent or to the address listed for Eagle Summit in the policy, and by failing to investigate the claims in the underlying action, State Farm waived its right to deny coverage.

It is well established, however, that "the doctrines of implied waiver and of estoppel, based upon the conduct or action of the insurer, are not available to bring within the coverage of a policy risks not covered by its terms, or risks expressly excluded therefrom." *Empire Cas. Co. v. St. Paul Fire & Marine Ins. Co.,* 764 P.2d 1191, 1198 (Colo.1988)(quoting *Hartford Live Stock Ins. Co. v. Phillips,* 150 Colo. 349, 352, 372 P.2d 740, 742 (1962)(quoting 29A Am.Jur. *Insurance* § 1135)).

In light of our conclusion that the claims in the underlying action are excluded from coverage in the policy, we thus reject the contention.

## III.

Finally, for similar reasons we reject the McGowans' contention that State Farm is estopped from asserting a denial of coverage

because it breached its duty to defend its insured. The coverage cannot be extended by the doctrine of estoppel. *See Empire Cas. Co. v. St. Paul Fire & Marine Ins. Co., supra,* 764 P.2d at 1198 (emphasis added) (quoting *Hartford Live Stock Ins. Co. v. Phillips, supra,* 150 Colo. at 352, 372 P.2d at 742 (quoting 29A Am.Jur. *Insurance* § 1135)).

Further, we agree with decisions of a majority of the courts in other jurisdictions holding that a breach of the duty to defend does not preclude an insurer from contesting its duty to indemnify. *See Signature Dev. Cos. v. Royal Ins. Co.,* 230 F.3d 1215, 1221–22 (10th Cir.2000)(collecting cases).

We therefore conclude that the trial court properly denied the McGowans' traverse to State Farm's answer to the writ of garnishment.

In light of our holding, we need not address State Farm's other arguments or the issues presented in its conditional cross-appeal.

Judgment affirmed.

Judge ROY and Judge CARPARELLI concur.