RAYMOND P. MOORE, United States District Judge
This litigation arises out of a coverage dispute between an insurance carrier and its insured. The parties' cross-motions for summary judgment ask the Court to resolve issues regarding the insurer's duty to *1096 defend and indemnify under a commercial general liability policy. Defendants Builders Insurance Group and Association Insurance Group (collectively, "Builders Insurance" or "Builders") argue that there was no duty to defend Plaintiffs RMHB Construction, Inc. and Nathaniel Lee Peterson (collectively, "RMHB") under a general liability policy for construction-related claims alleged against RMHB in a separate lawsuit previously filed by Brent and Elisabeth Niccore. (ECF No. 35.) Builders Insurance concludes that, since no duty to defend arose, there can be no duty to indemnify. RMHB's competing motion argues that Builders owed a duty to defend against the Niccores' claims as a matter of law. (ECF No. 42.) Regarding the duty to indemnify, RMHB asserts that resolution at the summary judgment stage is inappropriate.
For the reasons stated below, Plaintiffs RMHB Construction, Inc. and Nathaniel Lee Peterson's motion for summary judgment (ECF No. 42) is DENIED. Defendants Builders Insurance Group and Association Insurance Group's motion for summary judgment is GRANTED (ECF No. 35).
I. LEGAL STANDARD FOR SUMMARY JUDGMENT
Summary judgment is appropriate only if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) ; Celotex Corp. v. Catrett , 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) ; Henderson v. Inter-Chem Coal Co., Inc. , 41 F.3d 567, 569-70 (10th Cir. 1994). Whether there is a genuine dispute as to a material fact depends upon whether the evidence presents a sufficient disagreement to require submission to a jury or is so one-sided that one party must prevail as a matter of law. Anderson v. Liberty Lobby, Inc. , 477 U.S. 242, 251-52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ; Stone v. Autoliv ASP, Inc. , 210 F.3d 1132, 1136 (10th Cir. 2000) ; Carey v. United States Postal Serv. , 812 F.2d 621, 623 (10th Cir. 1987). Once the moving party meets its initial burden of demonstrating an absence of a genuine dispute of material fact, the burden then shifts to the nonmoving party to demonstrate the existence of a genuine dispute of material fact to be resolved at trial. See 1-800-Contacts, Inc. v. Lens.com, Inc. , 722 F.3d 1229, 1242 (10th Cir. 2013) (citation omitted).
"Where, as here, we are presented with cross-motions for summary judgment, we must view each motion separately, in the light most favorable to the non-moving party, and draw all reasonable inferences in that party's favor." United States v. Supreme Court of New Mexico , 839 F.3d 888, 906-07 (10th Cir. 2016) (citations and quotations omitted). " 'Cross motions for summary judgment are to be treated separately; the denial of one does not require the grant of another.' " Id. (quoting Buell Cabinet Co. v. Sudduth , 608 F.2d 431, 433 (10th Cir. 1979) ).
II. UNDISPUTED MATERIAL FACTS
A. Agreement to Prepare Property and Deliver a Modular Home
The facts underlying this dispute began in November of 2012 when Brent and Elisabeth Niccore entered a contract with RMHB[1] for lot improvements, construction of a modular home, and delivery of that modular home to real property at 535 Millionaire Drive West, Boulder, Colorado *1097 80302. (ECF No. 43-1, Underlying Compl. ¶¶ 8-15.)
By February of 2014, more than a year after entering the agreement, the Niccores' lot had not been prepared so the modular home could not be delivered. (Id. at ¶ 40.) Because the Niccores refused to pay additional money, Colorado Modular terminated the contract on February 25, 2014. (Id. at ¶ 41.) The Niccores refused to pay on the grounds that "Defendant Colorado Modular was incapable of performing their contract on budget because most of the site preparation was incomplete and, notwithstanding Defendant Peterson's assurances, the projected cost for delivery of the modular home had more than doubled." (Id. at ¶ 43.) The Niccores then retained counsel who sent a Notice of Claim letter, pursuant to C.R.S. § 13-20-803.5, addressed to Mr. Peterson and Colorado Modular Homes on July 2, 2014. (ECF No. 35-11.)
RMHB maintained a commercial general liability policy with Builders. (ECF Nos. 35-1 to 35-10.) Mr. Peterson, on behalf of RMHB, submitted the Notice of Claim to Builders Insurance for coverage under the policy. (ECF No. 43-1 at 11-21.) In response, Builders denied insurance coverage for the claim. (Id. ) As forecast in counsel's July 2, 2014 letter, the Niccores filed a lawsuit.
B. The Niccores' Underlying Lawsuit
The Niccores' lawsuit commenced on December 2, 2014 in the District Court of Boulder County.[2] (ECF No. 43-1 at 1-10.) RMHB tendered the complaint to Builders Insurance requesting a defense. (Id. at 22-27.) RMHB's counsel made additional written requests for a defense on January 6, 2015 and January 9, 2015. (Id. at 22-27.) Builders Insurance wrote back on January 14, 2015 denying both coverage for the claim and the demand for defense. (Id. at 28-33.) Ultimately, RMHB entered a settlement agreement to resolve the Niccores' claims.[3]
C. This Lawsuit
Following the settlement, RMHB filed this action in the District Court of Jefferson County against Builders Insurance to recover damages based on the alleged wrongful denial of coverage and failure to defend against the underlying lawsuit. (See ECF No. 5.) Builders then removed the case to this Court. (ECF No. 1.) In this case, RMHB asserts causes of action for breach of contract, insurance bad faith, statutory damages for bad faith, and declaratory judgment. (Id. ) RMHB and Builders Insurance each move for summary judgment in their favor. For the reasons discussed below, Builders contends there is no coverage under the policy as a matter of law. (ECF Nos. 35 and 49 at 4.) And, so its argument goes, "there is no *1098 duty to defend in the absence of factual allegations which might result in a covered liability." (Id. ) Accordingly, Builders contends that RMHB's entire case fails.
On the other hand, RMHB's motion for summary judgment argues that Builders Insurance owed a duty to defend the underlying lawsuit because the Niccores' complaint stated a claim that was arguably within the policy's scope of coverage. (ECF No. 42 at 6.) Both parties agree that whether a duty to defend exists is a legal question for the Court to determine by looking solely at the underlying complaint and insurance policy. (ECF No. 35 at 4-5; ECF No. 42 at 6; ECF No. 49 at 4-6.) But RMHB and Builders disagree about what Colorado law regarding the duty to defend means when comparing the underlying complaint to the insurance policy.
III. ANALYSIS
A. Evidence Submitted With Motions For Summary Judgment
In support of its summary judgment motion, Builders submits: (1) the general liability policies issued to RMHB (ECF Nos. 35-1 to 35-10); (2) a July 2, 2014 Notice of Claim letter addressed to Nathaniel Peterson (the "CDARA Notice") (ECF No. 35-11); (3) the Grand County Complaint (ECF No. 35-12); and (4) "Defendants Builders Insurance Group's First Set of Written Discovery Requests to Plaintiff RMHB Construction, Inc." (ECF No. 35-13).
In support of its summary judgment motion, RMHB submits: (1) the Boulder County Complaint (the "underlying lawsuit" or "underlying complaint") (ECF No. 43-1 at 1-10); (2) an August 14, 2014 letter from Builders Insurance addressed to Nathaniel Peterson (ECF No. 43-1 at 11-21); (3) a January 6, 2015 letter from counsel for RMHB addressed to Builders Insurance (ECF No. 43-1 at 22-26); (4) a January 9, 2015 letter from counsel for RMHB addressed to Builders Insurance (ECF No. 43-1 at 27); (5) a January 14, 2015 letter from Builders Insurance addressed to counsel for RMHB (ECF No. 43-1 at 28-33); and (6) a stipulation and order dismissing the underlying lawsuit (ECF No. 43-1 at 34-35). RMHB also relies on the insurance policies submitted by Builders.
Resolution of this dispute turns on the duty to defend. An "insurer's duty to defend an insured is triggered solely on the basis of the allegations made within the four corners of the complaint, read against the insurance policy." United Fire & Cas. Co. v. Boulder Plaza Residential, LLC , 633 F.3d 951, 960 (10th Cir. 2011) ; see also Cotter Corp. , 90 P.3d at 829. Neither party raises a dispute concerning the underlying complaint or insurance policies filed in support of the motions. Accordingly, the Court does not consider the other documents, or issues regarding admissibility, submitted by the parties.
B. Summary Judgment Motions
Builders contends that summary judgment on all of RMHB's claims is warranted because it owed no duty to defend against the allegations made in the underlying complaint because the policy provides no coverage. (ECF No. 35 at 2.) If there is no duty to defend, Builders argues, it follows that there can be no duty to indemnify under Colorado law because the duty to defend is broader than the duty indemnify. (Id. ) RMHB's separate motion for summary judgment seeks a determination that Builders owed a duty to defend as a matter of law based on the allegations contained in the four corners of the underlying complaint when compared with the plain language of the policy. (ECF No. 42 at 6-7.) Regarding the duty to indemnify, RMHB contends the determination of that issue is premature. (ECF No. 58 at 13-14.)
*1099 Before turning to these issues, the Court notes that an ultimate determination that no coverage exists does not control whether the insurer owed a duty to defend. The Supreme Court of Colorado explained that "for insurers that refuse to defend, we similarly base their duty to defend on the face of the complaint." Cotter Corp. v. Am. Empire Surplus Lines Ins. Co. , 90 P.3d 814, 828 (Colo. 2004). The purpose of the rule is to discourage "insurers to refuse to defend in the hope that litigation will reveal that no duty to defend exists." Id. The Court analyzes the duty to defend separately from the duty to indemnify.
1. DUTY TO DEFEND
There are several principles of Colorado insurance law that guide the Court's analysis. "As a general rule under Colorado law, an insurer's duty to defend an insured is triggered solely on the basis of the allegations made within the four corners of the complaint, read against the insurance policy." Boulder Plaza Residential, LLC , 633 F.3d at 960 ; see also Cotter Corp. , 90 P.3d at 829. To establish the insurer's duty to defend, "the insured need only show that the underlying claim may fall within policy coverage." Compass Ins. Co. v. City of Littleton , 984 P.2d 606, 614 (Colo. 1999) (internal citations and quotations omitted). A court examines the "nature of the facts alleged and claims pled in the complaint or amended complaint liberally with a view toward affording the greatest possible protection to the insured." Cyprus Amax Minerals Co. v. Lexington Ins. Co. , 74 P.3d 294, 297 (Colo. 2003).
To defeat a duty to defend, an insurer bears a "heavy burden." Hecla Mining Co. v. N.H. Ins. Co. , 811 P.2d 1083, 1089 (Colo. 1991). The insurer must establish that "there is no factual or legal basis on which the insurer might eventually be held liable to indemnify the insured." Id. at 1090. Where policy exclusions are implicated, "the insurer bears the burden of establishing that the allegations in the complaint are solely and entirely within the exclusions in the insurance policy." Cotter Corp. , 90 P.3d at 829 (quotation and citation omitted). Thus, if "there is some doubt as to whether a theory of recovery within the policy coverage has been pleaded, the insurer must accept the defense of the claim." Compass , 984 P.2d at 613-14. If the underlying complaint includes multiple claims, a duty to defend against all claims asserted arises if any of the claims arguably is a risk covered by the relevant insurance policy. Horace Mann Ins. Co. v. Peters , 948 P.2d 80, 85 (Colo. App. 1998) (citation omitted). Whether a duty to defend against a particular claim exists is a question of law. See Bumpers v. Guar. Trust Life Ins. Co. , 826 P.2d 358, 360 (Colo. App. 1991) ; see also Carl's Italian Rest. v. Truck Ins. Exch. , 183 P.3d 636, 639 (Colo. App. 2007). With these principles in mind, the Court now turns to the four corners of the underlying complaint and the insurance policy.
a. The Underlying Complaint
The Niccores' underlying complaint contains numerous allegations that both RMHB and Builders rely on in their motions. Builders focuses on the allegations concerning the business transaction, construction delays, and cost increases throughout the project. RMHB emphasizes the allegations that relate to mismanagement and damages. The Court recites the pertinent allegations in chronological order.
The construction project began in November of 2012 when the Niccores entered into a contract with Colorado Modular Homes to construct a single-family home on their property, which included lot improvements, purchase, delivery, and set up *1100 of a modular home. (ECF No. 43-1 at 3, ¶ 26.)
Problems began in February of 2013 when RMHB told the Niccores that the original contract price had not accounted for the cost to install a deck, HVAC, hot water heater systems, insulation, sprinklers, a rise in the price of materials, or a percolation test, which meant they were facing a large budget deficit. (Id. at 3, ¶ 30.) Throughout the spring of 2013, Colorado Modular informed the Niccores of numerous other problems it had not anticipated at the property with Boulder County, the permitting process, and other issues which resulted in unexpected expenses and delays. (Id. at 4, ¶ 31.) Nevertheless, in June of 2013, Mr. Peterson affirmed that they were still within their adjusted budget and urged the Niccores to build their modular home stating that the factory would raise the price if the Niccores waited any longer. (Id. at 4, ¶ 36.) Preparations on their property had not yet been completed-in other words, the lot was not ready for delivery of the modular home, but the Niccores authorized the home to be built anyways. (Id. at 4, ¶ 37.)
In September 2013, the City of Boulder suffered severe flooding. (Id. at 4, ¶ 38.) Mr. Peterson blamed the flooding for the lack of progress at the site and informed the Niccores again that there would be added expense in preparing their property for the modular home. (Id. ) "On or about November 21, 2013, a Boulder County inspector visited the Niccores property to inspect footings and silt barriers at the site but found the site completely unprepared for inspection and commented on the fact that there were no plans or permits onsite as required and that the property failed to have an erosion silt fence properly buried." (Id. at 4, ¶ 39.)
On February 25, 2014, Mr. Peterson notified the Niccores that the contract was terminated due to their refusal to pay more money to finish the project. (Id. at 5, ¶ 41.) According to the Niccores, it was clear that "Colorado Modular was incapable of performing their contract on budget because most of the site preparation was incomplete and notwithstanding Defendant Peterson's assurances, the projected cost for delivery of the modular home had more than doubled." (Id. at 5, ¶ 43.) "However, to show for all of their money and trouble, the Niccores only had a completed modular home accruing storage fees, with no means to pay for its transportation, and a property which was unprepared for the placement of the home despite Defendant Colorado Modular's year and a half on the project." (Id. at 5, ¶ 48.) "After Defendant Colorado Modular abandoned the project, the Niccores ... discovered that very little of what Defendant Colorado Modular claimed to have accomplished at the site was usable and that it would be like starting from scratch." (Id. at 5, ¶ 49.) The result of the deal with Mr. Peterson and Colorado Modular left the Niccores with a substantial loss. (Id. at 5, ¶ 51.)
According to the underlying complaint, Colorado Modular failed to construct lot improvements, manage the purchase, delivery, and set up of a modular home, and failed to remedy construction defects caused by its negligence. (Id. at 6, ¶ 69.) The Niccores further alleged that "Colorado Modular failed to perform contractual services necessary for the proper execution and completion of the residence, including but not limited to, failure to provide flatwork and septic at the Niccores' property, so as to make delivery of the modular home impossible." (Id. at 8, ¶ 74.) "Defendant Colorado Modular failed to perform the construction in a workmanlike manner reasonably suited for the purpose of human habitation." (Id. at 8, ¶ 76.) "Despite receiving the total contract price from Plaintiffs, Defendants Peterson and *1101 Colorado Modular failed to provide labor and materials necessary to complete the site preparation." (Id. at 8, ¶ 83.) "The property at 535 Millionaire Drive West was never completed and therefore the modular home was incapable of being delivered." (Id. at 8, ¶ 84.) "Defendants were negligent in obtaining and transmitting the true cost of performance under the contract to construct." (Id. at 9, ¶ 95.)
The underlying complaint asserted the following causes of action: (1) fraud in the inducement to contract by misrepresentation, nondisclosure, or concealment; (2) breach of contract for failure to construct; (3) breach of warranty; (4) civil theft by fraud/trust fund penalty; (5) negligent misrepresentation.[4] (See generally ECF No. 43-1 at 1-10.) The first, second, and third cause of action pray "for actual damages, court costs, interest at the statutory legal rate, and such greater relief as [the court] deems just and proper." (See id. at 6-8.) The fourth claim seeks three times the amount of actual damages and reasonable attorneys' fees. (See id. at 9.) The fifth claim requests "actual damages, statutory treble damages, reasonable attorneys' fees, court costs, interest at the statutory legal rate, and such greater and further relief as [the court] deems just and proper." (See id. at 10.) The Court now turns to the relevant policy provisions at issue.
b. The Policy
(1) Coverage
Builders Insurance issued three commercial general liability policies to RMHB Construction Inc. with effective dates from December 12, 2012 through December 14, 2015.[5] (ECF No. 35-1 at 8.) Coverage A provides the following:
We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies. We will have the right and duty to defend the insured against any 'suit' seeking those damages. However, we will have no duty to defend the insured against any 'suit' seeking damages for 'bodily injury' or 'property damage' to which this insurance does not apply. We may, at our discretion, investigate any 'occurrence' and settle any claim or 'suit' that may result[.]
(Id. at 19.) The policy defines "property damage" as
a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
b. Loss of use of tangible property that is not physically injured. All such loss shall be deemed to occur at the time of the 'occurrence' that caused it.
(Id. at 33.) The policy defines occurrence as "an accident, including continuous or repeated exposure to the same general harmful conditions." (Id. at 32.)
(2) Exclusions
The policy contains three exclusions that Builders Insurance relies on. First, under the Damage to Property Exclusion, the insurance does not apply to
*1102 [ (j)(5) ] that particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the 'property damage' arises out of those operations; or [ (j)(6) ] that particular part of any property that must be restored, repaired or replaced because 'your work' was incorrectly performed on it.
(Id. at 23.) There is an exception to the Damage to Property exclusion that provides "Paragraph [ (j)(6) ] of this exclusion does not apply to 'property damage' included in the 'products-completed operations hazard'." (Id. )
Second, Builders points to the Impaired Property Exclusion, which eliminates coverage for
'Property damage' to 'impaired property' or property that has not been physically injured arising out of:
(1) A defect, deficiency, inadequacy or dangerous condition in 'your product' or 'your work;' or
(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.
This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to 'your product' or 'your work' after it has been put to its intended use.
(Id. at 23.) Finally, Builders seeks application of the "Damage To Your Work" exclusion as modified by the "Residential Faulty, Defective or Poor Workmanship Exclusion." The operative exclusion states:
In regard only to 'your work' in connection with residential structures, Exclusion I. Damage to Your Work Of Section I - Coverages, Coverage A. Bodily Injury and Property Damage Liability, 2. Exclusion is deleted and replaced with:
I. Faulty, Defective or Poor Workmanship in Your Work
This insurance does not apply to any claim or 'suit' for the cost of repair, replacement, adjustment, removal, loss of use, inspection, disposal, or otherwise making good any faulty, defective or poor workmanship in 'your work' for which any insured or any insured's employees, contractors, or subcontractors may be liable.
This exclusion does not include 'property damage' sustained by any other property that is caused by the faulty, defective or poor workmanship in 'your work'.
This exclusion applies only to residential structures for which coverage is not otherwise excluded under this insurance.
(Id. at 34.) (emphasis in original).
(3) Additional definitions
The policy defines several more of the terms in quotes above. The policy defines "impaired property" to mean
tangible property, other than 'your work' or 'your product' that cannot be used or is less useful because:
a. It incorporates 'your product' or 'your work' that is known or thought to be defective, deficient, inadequate or dangerous; or
b. You have failed to fulfill the terms of a contract or agreement;
if such property can be restored to use by the repair, replacement, adjustment or removal of 'your product' or 'your work' or your fulfilling the terms of the contract or agreement.
(Id. at 31.) According to the policy, a "products-completed operations hazard"
a. Includes all 'bodily injury' and 'property damage' occurring away from premises you own or rent and arising out of 'your product' or 'your work' except:
(1) Products that are still in your physical possession; or *1103 (2) Work that has not yet been completed or abandoned. However, 'your work' will be deemed completed at the earliest of the following times:
(a) When all of the work called for in your contract has been completed.
(b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.
(c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.
Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.
(Id. at 33.)
The policy also provides definitions for the phrase "your work." And where it is used in the policy, "your work"
a. Means:
(1) Work or operations performed by you or on your behalf; and
(2) Materials, parts or equipment furnished in connection with such work or operations.
b. Includes:
(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of 'your work', and
(2) The providing of or failure to provide warnings or instructions.
(Id. at 34.)
c. Application of the underlying complaint to the insurance policy
(1) No allegations of "property damage"
In this case, the Court finds no allegations in the Niccores' complaint that would have triggered a duty to defend RMHB. The policy provides coverage for "those sums that the insured becomes legally obligated to pay as damages because of 'property damage.' " (ECF No. 35-1, Policy at 8 (emphasis added).) In turn, the "property damage" must be caused by an "occurrence." (Id. ) The policy defines the term occurrence as "an accident, including continuous or repeated exposure to the same general harmful conditions." (Id. at 32.) Reading the clauses together, if there is an accident that causes property damage and the insured may be legally obligated to pay for the property damages it has caused, then the commercial general liability policy may provide coverage for a claim against the insured.
Under Colorado law, accident means an unanticipated or unusual result flowing from a commonplace cause. Carroll v. CUNA Mut. Ins. Soc. , 894 P.2d 746, 753 (Colo. 1995). But "[a] breach of contract is not generally an accident that constitutes a covered occurrence." Union Ins. Co. v. Hottenstein , 83 P.3d 1196, 1201 (Colo. App. 2003). The Tenth Circuit, in further analyzing what constitutes an occurrence under a commercial general liability policy, explained that poor workmanship constituting a breach of contract was not a covered occurrence. Adair Grp., Inc. v. St. Paul Fire & Marine Ins. Co. , 477 F.3d 1186, 1188 (10th Cir. 2007) ; see also McGowan v. State Farm Fire & Cas. Co. , 100 P.3d 521, 525 (Colo. App. 2004) ("Comprehensive general liability policies normally exclude coverage for faulty workmanship based on the rationale that poor workmanship is considered a business risk to be borne by the policyholder, rather than a 'fortuitous event' entitling the insured to coverage.").
First, the underlying complaint asserts causes of action for fraud, breach of contract, breach of warranty, civil theft by *1104 fraud, and negligent misrepresentation. The breach of contract and breach of warranty claims target RMHB's failure to fulfill its contractual promise to construct and deliver the modular home. The fraud and civil theft claims allege that RMHB knew the true cost of construction, but concealed it from the Niccores to induce payments for labor and materials that were never performed. Similarly, the negligent misrepresentation claim alleges that RMHB misrepresented the true cost to fulfill the terms of the construction contract. Economic expectation damages, not property damages, are typically sought in connection with each of these causes of action. In other words, the causes of action seek to recover for the Niccores' lost benefit-of-the-bargain regarding the business transaction with RMHB-i.e., breach of contract-not damage to property caused by an accident.
Second, acknowledging that the stated causes of action are not dispositive in analyzing whether a duty to defend exists, the facts alleged in the underlying complaint fare no better to establish accidental property damage. In response to Builders' motion that repeatedly points to the absence of property damage, RMHB cites to various allegations in the underlying complaint that concern the agreement with the Niccores and its failure to fulfill those contractual obligations. (ECF No. 58 at 9-10 (citing ¶¶ 28, 29, 38, 49, 69, and 76).) Given the focus of Builders' arguments, the Court finds RMHB's response curious. Reading the paragraphs cited by RMHB broadly and in its favor, the allegations establish that the parties entered a contract for the preparation and placement of a modular home on the Niccores' lot; RMHB failed to perform its agreed-upon work; RMHB did not perform its work on schedule or for the agreed-upon amount; the work that RMHB did perform could not be used because it was done wrong. That's it. But under no reading of these allegations is the Court able to answer the critical question, which is whether property was damaged by an accident. At most, the allegations amount to a breach of contract or poor workmanship-neither of which meets the policy's definition of property damage. Adair Grp., Inc. , 477 F.3d at 1188 ; see also McGowan , 100 P.3d at 525.
Third, the Court rejects RMHB's strained argument that any impairment to the property "resulted from the September 2013 floods, and not from Plaintiffs' defective work." (ECF No. 58 at 12.) The underlying complaint alleged that "the City of Boulder suffered severe flooding." (ECF No. 43-1, ¶ 38.) And it further alleged that RMHB blamed the flooding for its lack of progress and the increased cost in preparing the property. (Id. ) But nowhere does the underlying complaint allege that the Niccores' property was damaged by the flood or that any of RMHB's acts or omissions combined with the flood to cause property damage. Instead, the allegations complain of delay and added expense caused by the flood , not RMHB. Although RMHB may have used the flood as an excuse for not meeting deadlines, the failure to meet deadlines does not constitute property damage that could be covered by the insurance policy issued to RMHB.
Finally, there is a profound difference between broadly construing factual allegations in the insured's favor and asking the Court (or an insurer) to create allegations nowhere stated in a complaint. Here, implicit in each one of RMHB's arguments, is a request for the Court to supply missing factual allegations, not to interpret them. Where a complaint against an insured does not allege property damage or its cause, the Court will not draft its own allegations. Courts examine an insurer's duty to defend "solely on the basis of the allegations made within the four corners of the complaint, *1105 read against the insurance policy." Boulder Plaza Residential, LLC , 633 F.3d at 960. Therefore, the Court finds that the underlying complaint does not allege covered "property damage" because the claims are based on economic damages resulting from RMHB's breach of contract, misrepresentations, or poor workmanship, not a fortuitous "accident."
(2) The allegations fall solely within exclusions
Assuming "property damage" for the sake of argument, RMHB's claims still fail based on exclusions in the Builders policy. Builders points to three exclusions: (1) the Damage to Property Exclusion; (2) the Impaired Property Exclusion; and (3) the Residential Faulty, Defective or Poor Workmanship Exclusion (the "Poor Workmanship Exclusion"). Builders Insurance bears the heavy burden of establishing that "the allegations in the complaint are solely and entirely within the exclusions in the insurance policy." Cotter Corp. , 90 P.3d at 829 (citation omitted). The Court finds that Builders has carried this heavy burden and established that the allegations in the underlying complaint fall solely and entirely within these exclusions.
1. Damage to Property Exclusions
First, section j(5) of the Damage to Property Exclusion eliminates coverage for property damage to RMHB's work while performing its operations, if the property damage arises out of those operations. And section j(6) of the provision excludes coverage for any property damage "that must be restored, repaired, or replaced because [RMHB's] work was incorrectly performed on it." With respect to the lot, the Niccores alleged damage to RMHB's own work or the failure to complete its required work. Coverage obviously does not exist for work that was never performed. And even under a broad reading of the underlying complaint, the Niccores alleged loss of use of the lot because of RMHB's failure to complete work, having to redo unusable work that had been completed, and generally faulty work-all of which is excluded by the policy. Moreover, the Court is hard-pressed to explain how any operations performed on an unimproved lot could not be considered RMHB's work-there was nothing else there. Thus, the Niccores either sought to recover damages arising out of RMHB's operations or to restore, repair, or replace RMHB's incomplete work. Either way, such damages fall solely and squarely within sections j(5) and j(6) of the Damage to Property Exclusion.
2. Impaired Property Exclusion
Next, the Court finds that the alleged loss of use of the lot, the inability to salvage the work that the insured did perform on the lot, and the loss of use of the modular home because of RMHB's mismanagement and breach of contract fall entirely within the Impaired Property Exclusion. Regarding the lot, the exclusion applies because the property either could not be used or was less useful solely because RMHB failed to fulfill the terms of its contract-either by deficiently performing its work or not performing the work at all.
With respect to the modular home, there is no suggestion by either party that it had been physically damaged. Thus, any claim that stems from not being able to use the modular home is to "property that has not been physically injured arising out of ... a delay or failure [by RMHB] to perform a contract or agreement in accordance with its terms." (ECF 35-1, Policy at 23.) Therefore, any coverage for loss of use of the modular home is expressly excluded by this provision.
And, contrary to RMHB's argument, the "loss of use" exception to the Impaired Property Exclusion does not restore coverage.
*1106 The loss of use exception to the Impaired Property exclusion requires "sudden and accidental physical injury to [RMHB's work] after it [had] been put to its intended use." (Id. ) As discussed above, the underlying complaint failed to allege any such accidental physical injury, let alone such an injury after RMHB's work had been put to its intended use. Accordingly, the loss of use exception does not restore coverage.
3. Poor Workmanship Exclusion
Finally, the Poor Workmanship Exclusion eliminates coverage based on the allegations in the underlying complaint. The Niccores' alleged that very little of RMHB's work was usable and that it did not perform its work properly or in a workmanlike manner. (ECF No. 43-1 at ¶ 49; ¶ 69; ¶¶ 74, 76.) Any such damages are expressly excluded as "the cost of repair, replacement, adjustment, removal, loss of use, inspection, disposal, or otherwise making good ... faulty, defective or poor workmanship in" RMHB's work. (ECF No. 35-1 at 34.)
RMHB tries to avoid the exclusion by arguing that the underlying complaint may allege damage to "other property" because the underlying complaint fails to specify what property was damaged. (ECF No. 42 at 15.) As discussed above, the Court will not create allegations of damage to "other property" where none exist. The failure to allege damage to other property cannot be the basis for triggering the duty to defend. And, as discussed above, RMHB was preparing a vacant lot for the modular home. There are no allegations that any "other property" existed on the vacant lot. There certainly are not allegations that RMHB's faulty work, or failure to complete its work, caused damage to parts of the property other than those on which RMHB was working. For these reasons, the Poor Workmanship Exclusion eliminates coverage for any damages claimed as a result of RMHB's substandard work.
2. DUTY TO INDEMNIFY
"Where there is no duty to defend, it follows that there can be no duty to indemnify." Constitution Assocs. v. New Hampshire Ins. Co. , 930 P.2d 556, 563 (Colo. 1996). Because the Court concludes that Builders owed RMHB no duty to defend, there is no duty to indemnify. Therefore, summary judgment is granted in favor of Builders on all of RMHB's claims. American Fam. Mut. Ins. Co. v. Hansen , 375 P.3d 115, 122 (Colo. 2016) ; Weitz Co., LLC v. Mid-Century Ins. Co. , 181 P.3d 309, 315 (Colo. App. 2007).
IV. CONCLUSION
For the foregoing reasons, Plaintiffs RMHB Construction, Inc. and Nathaniel Lee Peterson's motion for summary judgment (ECF No. 42) is DENIED. Defendants Builders Insurance Group and Association Insurance Group's motion for summary judgment is GRANTED (ECF No. 35). The Clerk is directed to enter JUDGMENT in favor of DEFENDANTS and close this case.

Mr. Peterson is involved with Aspen Investments, LLC and RMHB Construction, Inc. Colorado Modular Homes is a trade name registered to RMHB Construction, Inc. Neither party disputes that RMHB is insured under the applicable policy. Thus, the Court does not distinguish between the related entities for purposes of the motions.

The Court notes that RMHB relies on a copy of the December 2, 2014 Boulder County complaint whereas Builders offers a copy of a February 10, 2015 Grand County complaint. (Compare ECF No. 35-12 with ECF No. 43-1.) Neither party disputes that the complaints are "substantively identical." (ECF No. 58-1 at ¶ 15; ECF No. 49-1 at ¶ 15; ECF No. 62-1 at ¶ 14.) Because it appears that Builders Insurance considered the Boulder County complaint in denying coverage and a duty to defend (See ECF No. 43-1), all references to the "underlying complaint" or "underlying lawsuit" refer to the Boulder County complaint unless otherwise indicated.

RMHB attaches an order regarding a stipulation to dismiss the lawsuit filed in Boulder County. (Id. at 34-35.) Neither party explains the disposition of the February 10, 2015 lawsuit filed in the District Court of Grand County, Colorado. (ECF No. 35-12.) Notwithstanding the lack of explanation, the underlying lawsuits settled, which is the material fact that is not disputed for purposes of the motions.

Although the theory is not specified in the underlying complaint, the Court notes that at least two different negligent misrepresentation concepts are recognized in Colorado: (1) negligent misrepresentation causing physical harm; and (2) negligent misrepresentation causing financial loss in a business transaction. CJI-Civ. 9:3 and 9:4 (2017).

Although there are actually three separate policies, the Court simply uses the singular term "policy" as there is not a dispute that one of the three policies applied during the relevant times. The parties also do not point to a substantive variation among the policies' provisions that would control the outcome of either motion.